**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

**ARTIST PUBLISHING GROUP, LLC dba APG, a Delaware Limited Liability Company; FIRST-N-GOLD PUBLISHING, INC., a Florida Corporation; LUKASZ GOTTWALD an individual doing business as KASZ MONEY PUBLISHING; KMA ASSETS I LP, a Delaware Limited Partnership; KMA ASSETS II LIMITED, a United Kingdom Private Limited Company; KOBALT MUSIC PUBLISHING AMERICA, INC. dba KMPA, a Delaware Corporation; MXM MUSIC AB dba MXM, a Swedish Limited Liability Company; NOTTING HILL MUSIC, INC., a New York Corporation; and PRESCRIPTION SONGS, LLC, a California Limited Liability Company,**

        **Plaintiffs,**

        **vs.**

**ORLANDO MAGIC, LTD. dba ORLANDO MAGIC, a Florida Limited Partnership; and DOES 1-10, inclusive,**

        **Defendants.**

**Case No: 1:24-cv-05461-JSR**

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

---

1

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................ 3

FACTUAL BACKGROUND ............................................................................................... 7

   A.   Plaintiffs Are Music Publishers Administering Copyrighted Musical Works ................... 8

   B.   Defendant is a Commercial Entertainment Business Active On Social Media ................. 9

   C.   Plaintiffs Rely on TuneSat to Detect Potentially Unauthorized Uses ............................ 10

ARGUMENT ..................................................................................................................... 12

   I.   Standard of Review ......................................................................................................... 12

   II.   Plaintiffs Establish Their Direct Infringement Claim .................................................... 13

     A.   Plaintiffs control the copyrights in the Subject Works ................................................ 14

     B.   Defendant infringed Plaintiffs' Section 106 exclusive rights ...................................... 15

   III.   Defendant Willfully Infringed ...................................................................................... 20

   IV.   Defendant's Affirmative Defenses Are Unavailing ....................................................... 22

     A.   Plaintiffs' Claims Are Not Barred by the Statute of Limitations ................................. 23

     B.   Implied License, Acquiescence, Waiver and Estoppel, and Laches ............................ 29

     C.   Fair Use and First Amendment .................................................................................... 29

     D.   Copyright Misuse and Failure to State a Claim ........................................................... 30

CONCLUSION .................................................................................................................. 30

# TABLE OF AUTHORITIES

**Cases**

*ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988 (2d Cir. 1983) ............................ 15

*Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 293 (S.D.N.Y. 1997) ........................ 15

*Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317 (2d Cir.1995) .................................................... 17

*Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) ................................................. 16

*Arnstein v. Porter*, 154 F.2d 464, 469 (2d Cir. 1946) ................................................................... 15

*Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1543 (S.D.N.Y.1991) ............ 18

*Beastie Boys v. Monster Energy Co* ........................................................................................... 19

*Boisson v. Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001). ......................................................... 15

*Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914 (D. Conn. 1980)................................. 21

*Buffalo Broad. Co., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917 (2d

   Cir.1984) ....................................................................................................................................... 16

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F ............................................................ 18

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121 (2d Cir. 2008) ....................... 17

*CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004). ....................................... 12

*Davis v. Blige,* 505 F.3d 90, 98 (2d Cir. 2007) ............................................................................ 13

*Denker v. Uhry*, 820 F.Supp. 722, 728 (S.D.N.Y.1992)................................................................ 14

*Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 32 (2d Cir.1982) .......................... 12

*Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983)..................... 19

*Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013).............. 18

*Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986) ............................ 18

*Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) ............. 11

*Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999).................................................... 12, 15, 17

*HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377 ..................................................... 13

*Island Software & Comp. Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005)......... 16, 18

*Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 54-55 (2d Cir. 2003)............................... 12, 14, 15

*Joy Mfg. Co. v. CGM Valve & Gange Co., Inc.*, 730 F.Supp. 1387 (S.D.Tex.1989) ................... 14

*Kolbe Co. v. Armgus Textile Co.*, 315 F.2d 70, 74 (2d Cir. 1963 ....................................... 23

*Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981) ........... 21

*Lego A/S v. Best-Lock Const. Toys, Inc.*, 874 F.Supp.2d 75, 85-86 (2012)................................. 27

*Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995)................................................. 12

*Masi v. Moguldom Media Grp. LLC*, 2019 WL 3287819 (S.D.N.Y. Jul. 22, 2019) ..................... 27

*Merck & Co. v. Reynolds*, 559 U.S. 633 (2010) ....................................................... 22

*Merck & Co. v. Reynolds*, 559 U.S. 633, 653 ......................................................... 23

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 512 (S.D.N.Y. 2018...... 23

*Michael Grecco Productions, Inc. v. RADesign, Inc.*, 112 F.4th 144 (2d Cir. 2024 ........ 23, 24, 25

*Michael Grecco Productions, Inc.*, 345 F.Supp.3d.................................................... 29

*Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp.3d 461, 467 (S.D.N.Y. 2019).................... 22

*Minden Pictures, Inc. v. Conversation Prints, LLC*, No. 20-12542, 2022 WL 4667967 (E.D.

   Mich. Sept. 30, 2022)........................................................................... 27

*N.Y. Times Co. v. Tasini*, 533 U.S. 483, 495–96, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001)........ 16

*New York v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 670 (S.D.N.Y 2017) ..................... 19

*Nw. Mut. Life Ins. Co. v. Fogel*, 78 F.Supp.2d 70, 73–74 (E.D.N.Y. 1990)................................ 11

*O'Neil v. Ratajkowski*, 563 F.Supp.3d 112, 135 (2d Cir. 2021)......................................... 29

*Petrella v. Metro–Goldwyn–Mayer, Inc.*, 572 U.S. 663, 670 (2014) ........................................ 21

*PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215, 2018 WL 4759737, at *7

(S.D.N.Y. Sept. 30, 2018) .................................................................................................. 22

*Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014) ......................... 21, 22, 28

*Ranieri v. Adirondack Dev. Group, LLC*, 164 F.Supp.3d 305, 343-44 (N.D.N.Y 2016) ....... 22, 23

*Richardson v. Complex Media, Inc.*, 2021 WL 230192 (S.D.N.Y. Jan. 22, 2021) ...................... 17

*Sandoval v. New Line Cinema Corp.*, 147 F.3d 215 (2d Cir.1998) .............................................. 17

*Silberstein v. Fox Entm't Grp.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004) .............................. 15

*Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.,* 490 F.2d 1092 (2d Cir.1974) ................. 17

*Staehr v. Hartford Fin. Srvcs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008 ............................... 22

*Tolliver v. McCants*, 684 F.Supp.2d 343, 347 (2010) ................................................................. 27

*Tomasini v. Walt Disney Co.*, 84 F.Supp.2d 516, 519 (S.D.N.Y. 2000) ....................................... 15

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1378 (2d Cir. 1993) ............. 28

*Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017) .............................. 19

*Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.1986) ................................................. 14

*Warren v. John Wiley & Sons, Inc.*, 952 F.Supp.2d 610, 616 (S.D.N.Y. 2013) .......................... 16

*Webb v. Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012) ..................................................... 15

*Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 119 (2d Cir. 2018) ............................................. 23

*Wu v. John Wiley & Sons, Inc.*, No. 14 Civ. 6746 (AKH) (AJP), 2015 WL 5254885, (S.D.N.Y.

Sept. 10, 2015 ................................................................................................................. 22

*Yi Fu Chen v. Spring Tailor, LLC*, 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) ............. 11

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) ........................................... 17

**Statutes**

17 U.S.C. § 107 ............................................................................................................................... 32

17 U.S.C. § 201 ................................................................................................................. 20

Fed. R. Civ. P. 56. ........................................................................................................... 15

Fed.R.Civ.P. 52 ............................................................................................................... 17

Section 501 ...................................................................................................................... 17

## INTRODUCTION

This lawsuit is a textbook copyright infringement action. Defendant Orlando Magic, Ltd. dba Orlando Magic ("Orlando" or "Defendant") posted 35 videos on its social media pages and website that reproduced and displayed 27 music compositions owned by Plaintiffs. Defendant did this without Plaintiff's permission. What is more, Defendant's actions are willful copyright infringement. Defendant's witness testified that Defendant knows online audio-visual content requires a license to incorporate copyrighted music. Yet Defendant did not bother to investigate if it had a license to use Plaintiffs' music in this way. It did not seek to obtain a license and did not even do any investigation to discover who potentially owned the music. Instead, Defendant just posted Plaintiff's music as part of its social media strategy. As explained below, the Court should enter a judgment for Plaintiffs on the issues of copyright-infringement and Defendant's willful actions.

## FACTUAL BACKGROUND

Plaintiffs Artist Publishing Group, LLC, First-N-Gold Publishing, Inc., Lukasz Gottwald dba Kazs Money Publishing, KMA Assets I LP, KMA Assets II Limited, Kobalt Music Publishing America, Inc. dba KMPA, MXM Music AB dba MXM, Notting Hill Music, Inc., and Prescription Songs, LLC (collectively "Plaintiffs") are music publishers and administrators who control an extensive catalog of musical compositions. Plaintiffs' Statement of Material Fact ("SMF") ¶ 1. Of that catalog, 27 distinct compositions (the "Subject Works") are at issue in this dispute and cataloged in Exhibit 1 to the First Amended Complaint (Dkt. 40). SMF ¶ 2. Defendant owns and operates the National Basketball Association team, the Orlando Magic. SMF ¶ 3. Defendant knowingly exploited the Subject Works without regard for Plaintiffs' rights

in 35 videos posted online and on social media (the "Infringing Uses"). SMF ¶¶ 20-25. Orlando knew it had no right to use the Subject Works without a license. Yet it knowingly and willfully exploited the Subject Works in the Infringing Uses. Orlando even posted some of the videos after notice that its exploitation infringed Plaintiffs' copyrights. SMF ¶¶ 20-25, 54.

### A.    Plaintiffs Are Music Publishers Administering Copyrighted Musical Works

Plaintiffs own the copyrights in the Subject Works. SMF ¶ 6. Artist Publishing Group, LLC entered into exclusive co-publishing agreements with songwriters Mason David Levy, Kevin Clark White, Michael Clinton Woods, Andrew Nabeel Bazzi, Andreas Schuller, Justin Scott Franks, Michael Caren, Andrew Martin Cedar, Paulo Ytienza Rodrigues, Raphael Jurdin, Alex Schwartz, Joseph Khajadourian, Pierre-Antoine Joseph Michel Melki, Caleb Zackery Toliver, Charlie Otto Puth, Willie C. Poole, Lionel Cart, Samuel Denison Martin, and Breyan Stanley Isaacs, for their respective rights in the Subject Works, "Boyfriend," "Fireball," "GDFR," "I Cry," "No Idea," "See You Again," "Shawty Got Moves," "Type of Way," "Want To Want Me," "We Own It," and "Fantasy." SMF ¶ 7.

First-n-Gold Publishing Inc. entered into agreements with songwriters William Roberts and Shandel Green for exclusive rights and ownership in the works "All The Way Up," "I'm A Boss," and "All I Do Is Win." SMF ¶ 8.

Notting Hill Music, Inc. entered into agreements with songwriters Cecil Demetrius Womack, Francesca Maeondra Richard, and Khaled Mohammed Khaled for exclusive rights in the works "A Little Party Never Killed Nobody (All We Got)," "(I Know I Got) Skillz," and "All I Do Is Win." SMF ¶ 9.

MXM Music AB entered into an agreement with songwriter Max Martin for exclusive

rights to "…Baby One More Time," "It's Gonna Be Me," and "Hot n Cold." SMF ¶ 10.

Lukas Gottwald, doing business as Kasz Money Publishing, is the co-writer and owner of the copyrights as an author for the works "My First Kiss," "Tik Tok," "Time of Our Lives," and "Hot n Cold." SMF ¶ 11.

Prescription Songs, LLC entered into agreements with songwriters Aaron Jennings Puckett, Emily Schwartz, Katy Perry, Philip Meckspecker, Benjamin Joseph Levin, and Kesha Sebert for exclusive rights in "Boys," "Don't Start Now," "Girls Like You," "Lean On," "My First Kiss," "Tik Tok," "Time of Our Lives," and "Hot n Cold." SMF ¶ 12.

KMA Assets I LP obtained rights through a purchase agreement in the works "A Little Party Never Killed Nobody (All We Got)." SMF ¶ 13. KMA Assets II Limited obtained rights through a purchase agreement in "I Love It (feat. Charli XCX)." SMF ¶ 14.

The Subject Works are registered with the United States Copyright Office. SMF ¶ 15. Kobalt Music Publishing America, Inc. ("Kobalt") has entered into exclusive administration agreements with the other Plaintiffs or into intercompany agreements with affiliates who have entered into exclusive administration agreements with the other Plaintiffs to obtain exclusive rights and administer rights in the Subject Works. SMF ¶ 16.

**B.      Defendant is a Commercial Entertainment Business Active On Social Media**

Defendant owns and operates several social media accounts and a team website through nba.com. SMF ¶ 17. Defendant states that it administers the following social media accounts in response to Plaintiffs' interrogatories: (1) https://www.facebook.com/OrlandoMagic; (2) https://www.instagram.com/orlandomagic/; (3) https://x.com/OrlandoMagic; (4) http://www.youtube.com/@OrlandoMagic; (5) TikTok: https://www.tiktok.com/@orlandomagic; (6) Snapchat: https://www.snapchat.com/add/magicnba. SMF ¶ 18. Defendant maintains a page

on the nba.com website that directs visitors to Defendant's content relating to news, promotional videos, highlights, links to purchase merchandise using Defendant's brand, and tickets. SMF ¶ 19. Defendant posts audio-visual content on these accounts and its website for promotional purposes and fan engagement, including Infringing Uses. SMF ¶ 20.

When creating its audio-visual content, including the Infringing Uses, Defendant recklessly used music without regard for its ownership or needing a synchronization license for its posted content. SMF ¶ 21. Defendant did not have a policy for clearing copyrighted works for its content. SMF ¶ 22. Defendant knew licenses were required to use third-party copyrighted materials. SMF ¶ 23. Defendant had a library of licensed music through a third-party service. SMF ¶ 24. Defendant did not make copyright clearance inquiries to Plaintiffs, or any other party, before posting its content. SMF ¶ 25. Yet Defendant posted the Infringing Uses knowing it had no right to use the music in that content, knowing it did not determine who did have rights in the content, and knowing doing so violated their rights. SMF ¶¶ 20-25.

## C.    Plaintiffs Rely on TuneSat to Detect Potentially Unauthorized Uses

On May 8, 2020, Kobalt engaged TuneSat, LLC ("TuneSat") to detect its and the other Plaintiffs' musical compositions in broadcasts of commercial content. SMF ¶ 27. TuneSat is an independent audio monitoring service. SMF ¶ 28. TuneSat's unique audio recognition technology monitors television and online content, helping rightsholders identify uses of their music. SMF ¶ 29. TuneSat's technology creates "acoustic fingerprints" from client music recordings. SMF ¶ 30. It then runs those "acoustic fingerprints" against archived content stored by TuneSat. SMF ¶ 31. TuneSat engages in quality control to validate detections of its clients' music. SMF ¶ 32. TuneSat's technology cannot find a detection if it does not have an "acoustic fingerprint" of a client's work. SMF ¶ 33. TuneSat likewise cannot find a detection if TuneSat

has not located and archived a particular channel of videos by a potential infringer. SMF ¶ 34.

On or around July 13, 2020, Kobalt retained the Kuhn Law Group ("Kuhn") to advise and confirm whether TuneSat's detections amounted to infringement and to pursue those claims once confirmed. SMF ¶ 35. As part of this engagement, TuneSat would provide Kuhn detections of the Plaintiffs' works. SMF ¶ 36. Then Kuhn would analyze whether the potentially infringing use was properly licensed and whether any other defenses to infringement existed for each detection. SMF ¶ 37. If not, Kuhn would begin the process of seeking recovery for the infringing activity. *Id.*

In  2021, TuneSat began detecting the Plaintiffs' works in the Defendant's content posted to Defendant's website and social media accounts as discovered above. SMF ¶ 38. TuneSat brought these detections to Kuhn's attention. Kuhn then accessed these detections through TuneSat's case management system and did its infringement review. SMF ¶ 40. After this review, and seeing no licenses, fair use, or other applicable copyright defense, Kuhn began notifying Defendant of the potentially infringing uses. SMF ¶ 39. After an initial confirmation with Kobalt in 2021 that Defendant did not have licenses for any of Plaintiffs' works, Kobalt authorized Kuhn to enforce detections they confirmed to be infringing without further input. SMF ¶ 41.

On March 8, 2021, an attorney at Kuhn sent the first letter to Defendant regarding alleged infringement. SMF ¶ 42. But this March 8, 2021 letter did not relate to any of the infringements at issue here. SMF ¶ 43. A Kuhn attorney sent another letter on July 19, 2021. SMF ¶ 44. The July 19, 2021 letter contained 42 uses of the Plaintiffs' music in the Defendant's content. SMF ¶ 45. Of those 42 uses, only 10 are at issue. SMF ¶ 46. For the 10 uses included in the July 19, 2021 letter, Kuhn viewed the detections of those uses from TuneSat on July 19, 2021, and sent

out the demand letter to Defendant on the same day. SMF ¶ 47. Kuhn did not delay even one day between the new TuneSat detections becoming visible on their case management system and sending out the letter. SMF ¶ 48.

On August 17, 2021, Kuhn sent another letter to Orlando. This correspondence included a spreadsheet of detected uses but removed one detection (from those included in the July 2021 letter) and included no additional detections. SMF ¶ 49. On December 2, 2021, Kuhn sent another letter to Orlando with an updated list of uses, but no new uses. SMF ¶ 50. On June 17, 2022, Kuhn sent another letter identifying 33 new detections of infringing uses since the December 2, 2021 letter. SMF ¶ 51. Kuhn sent a final letter on August 22, 2023, with an updated report removing four detections and adding one new detection to the list of infringing uses. SMF ¶ 52. As demonstrated by the letters, the Plaintiffs first became aware of 10 infringements relevant here by Defendant on July 19, 2021 and became aware of 25 of the 35 detections involved in this lawsuit only after December 2, 2021.

Despite receiving numerous letters notifying them of their infringement over several years, Defendant failed to resolve this issue. SMF ¶ 53. Indeed, Defendant continued to infringe, uploading one of the Infringing Uses in 2023 and another in 2024. SMF ¶ 54.

The ultimate facts are clear: Defendant knew it needed a license for Plaintiffs' works yet exploited them for Defendant's benefit without paying a dime.

## ARGUMENT

## I.    Standard of Review

The court may summarily adjudicate issues where "there is no genuine dispute as to any material fact" and a party "is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When "no rational jury could find in favor of the nonmoving party because the evidence to

support its case is so slight, there is no genuine issue of material fact, and a grant of summary judgment is proper." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted). That "opposing parties assert competing versions of the same event is not in itself sufficient to preclude summary judgment" unless it "lead[s] to a different legal outcome." *Yi Fu Chen v. Spring Tailor, LLC*, 2015 WL 3953532, at *4 (S.D.N.Y. June 29, 2015) (citation omitted). And if "a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff 'may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element] of [the non-moving party's case].'" *Nw. Mut. Life Ins. Co. v. Fogel*, 78 F.Supp.2d 70, 73–74 (E.D.N.Y. 1990) (citation omitted).

## II. Plaintiffs Establish Their Direct Infringement Claim

To establish infringement under the Copyright Act, Plaintiffs must show only that (1) they have a "valid copyright in the work allegedly infringed" and (2) that Defendant infringed their copyrights "by violating one of the exclusive rights that 17 U.S.C. § 106 bestows upon the copyright holder." *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995). Plaintiffs establish copying by showing that Defendant had an opportunity to "access" the Subject Works and that the Subject Works and the Infringing Work are "substantially similar." *Hamil Am., Inc. v. GFI*, 193 F.3d 92, 99 (2d Cir. 1999), *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 54-55 (2d Cir. 2003) (citations omitted). Copyright infringement liability is a strict liability offense; thus, Plaintiffs need not show any knowledge or intent by Defendant to establish liability. *CoStar Grp., Inc. v. LoopNet, Inc.*, 373 F.3d 544, 549 (4th Cir. 2004).

As demonstrated below, Defendant violated Plaintiffs' exclusive copyrights and summary judgment is appropriate.

### A.  Plaintiffs control the copyrights in the Subject Works

A "certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright." *Hamil Am. Inc.*, 193 F.3d at 98. Plaintiffs registered the Subject Works. SMF ¶ 15. Defendant has produced no evidence that anyone other than Plaintiffs own the Subject Works. SMF ¶ 57. Plaintiffs have accordingly satisfied this element as to every work.

Assuming that the copyright registrations are insufficient, Plaintiffs' rights in the Subject Works are established through several chain-of-title documents. SMF ¶ 6. "The Copyright Act authorizes only two types of claimants to sue for copyright infringement: (1) owners of copyrights, and (2) persons who have been granted exclusive licenses by owners of copyrights." *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 32 (2d Cir.1982), superseded on other grounds by Fed.R.Civ.P. 52(a). Section 501(b) of the Copyright Act provides that "the legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

Under section 106, a copyright holder has the exclusive rights to reproduce, distribute, publicly display, perform, and create derivative works of the copyrighted work. 17 U.S.C. § 106 (listing the exclusive rights associated with copyright ownership); *John Wiley & Sons, Inc. v. DRK Photo*, 998 F. Supp. 2d 262, 280 (S.D.N.Y. 2014), *aff'd*, 882 F.3d 394 (2d Cir. 2018) ("The "exclusive rights" referenced in Section 501(b) are set out in Section 106...").

Owners may grant a license to others to exercise Section 106 rights or assign those rights to others. *Davis v. Blige,* 505 F.3d 90, 98 (2d Cir. 2007). Two general categories of licenses are

14

granted: nonexclusive licenses and exclusive licenses. *Id.* at 99. An exclusive license "grant[s] to the licensee the exclusive right—superior even to the copyright owners' rights—to use the copyrighted material in a manner as specified by the license agreement." *Id.* In determining whether a licensee has exclusive rights and thus standing to sue, courts "look to the substance of the agreement, not the labels it uses." *John Wiley & Sons, Inc.*, 998 F. Supp. 2d at 280, citing *HyperQuest, Inc. v. N'Site Sols., Inc.*, 632 F.3d 377, 383 (7th Cir. 2011).

Plaintiffs obtained exclusive rights in the copyrights for the Subject Works. SMF ¶ 6. Plaintiffs Artist Publishing Group, LLC, First-n-Gold Publishing, Inc., MXM Music AB, Notting Hill Music, Inc., and Prescription Songs each obtained exclusive rights in the musical compositions at issue through agreements with each Subject Work's respective author or co-author. SMF ¶¶ 7-12. KMA Assets I LP and KMA Assets II Limited obtained rights through an assignment from the author of the Subject Works they own. SMF ¶¶ 13-14. Finally, Kobalt Music Publishing America, Inc. has entered into exclusive administration agreements with each publishing company directly or through other Kobalt-related entities, transferring those rights through intercompany agreements with Plaintiffs ultimately retaining exclusive rights in the works. SMF ¶ 16. The exclusive rights granted under each Plaintiffs' respective agreements include Section 106 rights providing each with standing and proving the first element for direct copyright infringement.

### B. Defendant infringed Plaintiffs' Section 106 exclusive rights

The second criterion, copying of original constituent elements, may be proven with either direct or indirect evidence: to prove copying via indirect evidence, a plaintiff must show (1) the defendant's access to the allegedly infringed work, (2) actual copying, and (3) unlawful appropriation of copyrightable materials. *See Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48

(2d Cir.1986); *Denker v. Uhry*, 820 F.Supp. 722, 728 (S.D.N.Y.1992). Copying can

be proved without showing access where relevant parts of two works are so strikingly similar as

to preclude the possibility of independent creation. *Lipton.*, 71 F.3d at 47; *Joy Mfg. Co. v. CGM*

*Valve & Gange Co., Inc.*, 730 F.Supp. 1387 (S.D.Tex.1989).

     Defendant cannot contest that the Infringing Uses contain the Subject Works. Indeed,

during the Defendant's 30(b)(6) deposition, the deponent repeatedly testified that he recognized

the Subject Work and that it sounded substantially similar to the song in the Infringing Use:

> Q. And the last time you testified you said that all of the Plaintiffs'
> works sounded substantially similar to the works that were in the
> videos, do you still agree with that?
>
> A. Uh, yes. SMF ¶ 58.

     Plaintiffs can prove each element of copying. "Access means that an alleged infringer had

a 'reasonable possibility'—not simply a 'bare possibility'—of hearing the prior

work; access cannot be based on mere 'speculation or conjecture.'" *Jorgensen*, 351 F.3d at

51. To support a claim of access, a plaintiff must offer "significant, affirmative, and probative

evidence." *Id.* Since it is rare in a copyright infringement action for the plaintiff to have

direct access to the defendant viewing and copying its work, courts have recognized

that access may be shown by circumstantial evidence. *Hamil Am. Inc.*, 193 F.3d at 99. As proof

of access, a plaintiff may show that "(1) the infringed work has been widely disseminated or (2)

a particular chain of events exists by which the defendant might have gained access to the

work." *Tomasini v. Walt Disney Co.*, 84 F.Supp.2d 516, 519 (S.D.N.Y. 2000). "A work is

'widely disseminated' when it has had 'considerable commercial success' or is 'readily available

on the market.'" *Webb v. Stallone*, 910 F. Supp. 2d 681, 686 (S.D.N.Y. 2012),

quoting *Silberstein v. Fox Entm't Grp.*, 424 F. Supp. 2d 616, 627 (S.D.N.Y. 2004). Access can be

inferred where "a party had a reasonable possibility of viewing the prior work." *Boisson v.*
*Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001).

In *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988 (2d Cir. 1983), access
was inferred where a song was on the popular music charts for weeks. In *Arnstein v. Porter*, 154
F.2d 464, 469 (2d Cir. 1946), the court inferred access where "more than a million copies of one
of [plaintiff's] compositions were sold; copies of others were sold in smaller quantities or
distributed to radio stations or band leaders or publishers, or the pieces were publicly
performed." And in *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 988 F. Supp. 289, 293 (S.D.N.Y.
1997), a court in this District drew an inference of wide dissemination where the allegedly
infringed song was a top-five country hit at the time of the alleged infringement.

Here, widespread dissemination cannot be contested. Of the 27 compositions, 16 peaked
in the top 10 on the Billboard Hot 100 Chart, 24 have over 100 million total streams (including 5
with over 1 billion total streams). SMF ¶ 55. Each of the 27 compositions appear on all primary
streaming services, including Apple, Spotify, and Amazon. SMF ¶ 56.

Plaintiffs have the exclusive right to reproduce, display, prepare derivative works of, and
distribute copies of their copyrighted work. *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 117 (2d
Cir. 2010), citing 17 U.S.C. § 106. Copyright is commonly conceived as "a bundle of discrete
exclusive rights," each of which may be transferred or retained separately by the copyright
owner. *N.Y. Times Co. v. Tasini*, 533 U.S. 483, 495–96, 121 S.Ct. 2381, 150 L.Ed.2d 500 (2001)
(internal quotation marks omitted). *See* 17 U.S.C. § 201(d)(2). A "party who violates the
exclusive rights of the copyright owner is an infringer[.]" *Warren v. John Wiley & Sons, Inc.*,
952 F.Supp.2d 610, 616 (S.D.N.Y. 2013). Infringement of "one . . . exclusive right[]" is
sufficient for an infringement finding. *Island Software & Comp. Serv., Inc. v. Microsoft Corp.*,

413 F.3d 257, 260 (2d Cir. 2005).

Plaintiffs' claims concern one specific right in copyright for a musical composition, the so-called "synchronization right." The Copyright Act does not explicitly define or confer a "synchronization" right. That said, it gives the copyright holder the exclusive right (among others) "to reproduce the copyrighted work in copies or phonorecords." 17 U.S.C. § 106 (1). As the Second Circuit has described it, "the so-called synchronization right, or 'synch' right ... [is] the right to reproduce the music onto the soundtrack of a film or a videotape in synchronization with the action. The 'synch' right is a form of the reproduction right also created by statute as one of the exclusive rights enjoyed by the copyright owner." *Buffalo Broad. Co., Inc. v. Am. Soc'y of Composers, Authors & Publishers*, 744 F.2d 917, 920 (2d Cir.1984). The Second Circuit then noted, "When [a] producer wishes to use outside music in a film or videotape program, it must obtain from the copyright proprietor the 'synch' right in order to record the music on the soundtrack of the film or tape." *Id.* at 921. Such a license is necessary because "incorporating a copyrighted sound recording into the soundtrack of a taped commercial television production infringes the copyright owner's exclusive right of reproduction." *Agee v. Paramount Commc'ns, Inc.*, 59 F.3d 317, 319 (2d Cir.1995).

Infringement of a "reproduction right" (which includes the synchronization right just described) occurs when a work is reproduced without the artist's consent. *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008). Defendant violated this right by reproducing the Subject Works as part of the Infringing Uses and by then downloading, streaming, playing, and/or recording a copy of the Infringing Uses onto or through social media platforms and websites. *See, e.g., Richardson v. Complex Media, Inc.*, 2021 WL 230192, at *2 (S.D.N.Y. Jan. 22, 2021) (denying a motion to dismiss where the defendants caused a copy of the

plaintiff's work to be uploaded to Instagram's servers establishing copyright infringement).

"[A]n inquiry into the substantial similarity between a copyrighted work and the allegedly infringing work must be made on a case-by-case basis, as there are no bright-line rules for what constitutes substantial similarity." *Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217 (2d Cir.1998). Indeed, the Second Circuit has "endorsed the notion that, '[g]ood eyes and common sense may be as useful as deep study of reported and unreported cases, which themselves are tied to highly particularized facts.'" *Hamil Am., Inc.*, 193 F.3d at 102, quoting *Soptra Fabrics Corp. v. Stafford Knitting Mills, Inc.,* 490 F.2d 1092, 1093 (2d Cir.1974). "The standard test for substantial similarity," used in most copyright infringement cases, asks "whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'" *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001) (quoting *Hamil Am., Inc.*,193 F.3d at 100).

Defendant cannot contest that it used the Subject Works in the Infringing Uses. Defendant admitted as much during its deposition. Further, an ordinary observer hearing the Subject Work and the Infringing Use can hear the same song being played. SMF ¶ 59. Finally, TuneSat's software, which is designed to detect uses of a song in another piece of content, detected each of the Subject Works in the Infringing Uses. SMF ¶¶ 35-41.

For the reasons described in Section, I Plaintiffs established "ownership." For the reasons described in Section II, Plaintiffs have now established the element of "copying of original constituent elements" and prove their claim for direct copyright infringement. Plaintiffs should be awarded summary judgment on their claims for copyright infringement. In addition, as described below, Plaintiffs should be awarded summary judgment on the element of "willfulness" in connection with these claims.

**III.    Defendant Willfully Infringed**

Willfulness may be established on summary judgment. *See, e.g., Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26, 31 (2d Cir. 2013). To prove "willfulness" under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity or (2) that the defendant's actions were the result of "reckless disregard" for or "willful blindness" to, the copyright holder's rights. *Island Software & Computer Serv., Inc.*, 413 F.3d at 260. Willfulness can exist even when an infringer had only "constructive knowledge" of the infringement, *see Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110, 1115 (2d Cir. 1986); "should have known" of the infringement, *see Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F.Supp. 1522, 1543 (S.D.N.Y.1991)) or "fail[ed] to investigate because [he] was afraid of what the inquiry would yield[.]" *Fendi Adele S.R.L.*, 696 F.Supp.2d at 393. The Court "need not find that an infringer acted maliciously to find willful infringement." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp.3d 395, 411 (S.D.N.Y. 2016) (citing *Fitzgerald Pub. Co.*, 807 F.2d at 1115 (remaining citations omitted)). To the contrary, "a party may act recklessly by refusing, as a matter of policy, to even investigate or attempt to determine whether particular [works] are subject to copyright protections." *Unicolors, Inc. v. Urban Outfitters, Inc.*, 853 F.3d 980, 992 (9th Cir. 2017). And "reckless disregard" is based on the knowledge and experience of the defendant as an entity, as the general rule is that "[a] corporation is considered to have acquired the collective knowledge of its employees." *New York v. United Parcel Serv., Inc.*, 253 F. Supp. 3d 583, 670 (S.D.N.Y 2017). This is particularly true where, as here,[1] the infringer admits it knew that a license is required to use the copyrighted work of another and also takes steps to

---

[1] Deposition of Geoffrey Krohmer: "Q. Yes, just copyrights in general. If someone has a copyright does Orlando Magic understand that generally it would need a license to use that work? A. Yes." SMF ¶ 23 [71:23-72:2.].

protect Defendant's own intellectual property. *See Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y. 1983) ("as the publisher of a copyrighted newspaper, the defendant was or should have been aware that its unauthorized republication of a Washington Post article constituted copyright infringement."). Defendant has eight copyrights registered with the United States Copyright Office. SMF ¶ 70.  Defendant has thirty three trademarks with the United States Trademark and Patent Office. SMF ¶ 71.

Another factor that weighs heavily on willfulness is the relative sophistication of the infringer and the infringer's policy towards others' intellectual property rights. For example, in *Beastie Boys v. Monster Energy Co.*, the Court stated that the infringement was willful, in part because:

> Despite being a large, sophisticated corporation with a $120 million annual marketing budget and with safeguards in place to protect its own intellectual property rights "Monster had no comprehensive music licensing policy; it tasked unqualified and untrained employees with the job of creating and disseminating promotional recap videos that presented a goodly risk of trenching on others' rights; and it protected its own intellectual property interests with far more vigor and solicitude than it did others." 112 F.Supp.3d 31, 41-42 (S.D.N.Y. 2015).

Defendant testified it is a sophisticated corporation. SMF ¶ 60. Defendant testified that it did not have a policy regarding the use of third-party copyrights at the time the Infringing Uses were made, and even to this day, continues not to have an official policy but simply a general understanding to be "mindful" of potential infringement. SMF ¶ 61. Defendant testified that it did not investigate who owned the Subject Works it exploited before posting the content. SMF ¶ 62. Defendant testified that it did not investigate if Defendant had a license or the right to use the Subject Works in online or social media posts. SMF ¶ 63. Finally, Defendant testified that no one in its social media department was taught or trained to obtain a license for music to use in social media posts. SMF ¶ 64. At a minimum, Defendant acted recklessly concerning

Plaintiffs' intellectual property rights.

Defendant could not have believed it did not need a license to use the Subject Works online, given the popularity of the works. Indeed, the opposite is true, which is supported by Defendant's testimony. The Orlando deponent indicated that Orlando had two sources from which to draw properly licensed music: 1) Orlando's own library of production music, Killer Tracks; or 2) the NBA's library of production music, United Masters. SMF ¶ 65. By sourcing music outside of these libraries, from which Orlando could search and pull music directly, Orlando knew that they were using unlicensed music and that a license was required.

In addition, after stepping outside the traditional sources of licensed music, Orlando was alerted multiple times that it had infringed on Kobalt's music. SMF ¶¶ 42, 44, 49-52. Even so, after receiving the letters, Orlando continued to post infringing content, including as recently as last year, posting Infringing Uses in 2024 and 2023. SMF ¶ 54. Orlando did not even try to investigate whether it correctly licensed the music in the Infringing Uses. SMF ¶ 67.

Finally, information regarding Defendant's involvement in past copyright infringement suits is also relevant because such behavior is directly related to the issue of calculating statutory damages and willfulness. *See Lauratex Textile Corp. v. Allton Knitting Mills*, 519 F. Supp. 730, 733 (S.D.N.Y. 1981) (referring to the defendant's prior copyright litigation- an "indication that the business of encroaching upon others' copyrights is not unfamiliar to the defendant"- is telling in awarding statutory damages); *see also Boz Scaggs Music v. KND Corp.*, 491 F. Supp. 908, 914 (D. Conn. 1980). Defendant has been the subject of copyright litigation for the infringing use of music in the past. SMF ¶ 68. This, too, supports a willfulness finding.

**IV.    Defendant's Affirmative Defenses Are Unavailing**

Defendant cannot dispute the facts supporting Plaintiffs' case that Defendant willfully infringed Plaintiffs' copyrights. Instead, Orlando insists that it can escape liability through one or another affirmative defense. As detailed below, Orlando's affirmative defenses provide no defense at all.

## A. Plaintiffs' Claims Are Not Barred by the Statute of Limitations

Civil actions under the Copyright Act must be brought "within three years after the claim accrued." 17 U.S.C. § 507 (b); *accord, e.g.*, *Petrella v. Metro–Goldwyn–Mayer, Inc.*, 572 U.S. 663, 670 (2014); *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d Cir. 2014). Plaintiffs filed their complaint on July 19, 2024 (Dkt. 4), and therefore, all infringements discovered on or after July 19, 2021, fall within the operative statute of limitations period. Plaintiffs discovered the Infringing Uses at issue on or after July 19, 2021, at the earliest, and accordingly, the Infringing Uses are not barred by the statute of limitations.

The Second Circuit "follows the 'discovery rule,' under which 'copyright infringement claims do not accrue until actual or constructive discovery of the relevant infringement.'" *Wu v. John Wiley & Sons, Inc.*, No. 14 Civ. 6746 (AKH) (AJP), 2015 WL 5254885, at *4 (S.D.N.Y. Sept. 10, 2015), quoting *Psihoyos*, 748 F.3d at 124–25 & n.3 (collecting cases). "Therefore, a copyright infringement claim accrues when a plaintiff discovers, or with due diligence should have discovered, the relevant infringement." *PK Music Performance, Inc. v. Timberlake*, No. 16-CV-1215, 2018 WL 4759737, at *7 (S.D.N.Y. Sept. 30, 2018), citing *Psihoyos*, 748 F.3d at 124. "In determining the time at which discovery ... occurred, terms such as inquiry notice and storm warnings ***may be useful*** to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating." *Merck & Co. v. Reynolds*, 559 U.S. 633, 653 (2010) (emphasis added, internal quotations omitted); however, "inquiry notice is

not the same as actual or constructive discovery" *Ranieri v. Adirondack Dev. Group, LLC*, 164

F.Supp.3d 305, 343-44 (N.D.N.Y 2016) (internal quotations omitted) (citing *Merck*).

Accordingly, "the limitations period does not begin to run until the plaintiff … discovers

or a reasonably diligent plaintiff would have discovered the facts constituting the violation...

irrespective of whether the actual plaintiff undertook a reasonably diligent

investigation." *Id.* (internal quotations and citations omitted). The standard for constructive

discovery – whether a plaintiff should have discovered the relevant infringement – is an

objective one. *PK Music Performance, Inc.*, 2018 WL 4759737, at *7 (citing *Staehr v. Hartford*

*Fin. Srvcs. Grp., Inc.*, 547 F.3d 406, 427 (2d Cir. 2008)); *see also Wu*, 2015 WL 5254885, at

*6 (knowledge that textbook publishers generally exceed licenses was not sufficient to

constitute constructive discovery of specific infringement). "A claim does not accrue when a

person has a mere hunch, hint, suspicion, or rumor of a claim, but such suspicions do give rise

to a duty to inquire into the possible existence of a claim in the exercise of due

diligence." *Minden Pictures, Inc. v. Buzzfeed, Inc.*, 390 F. Supp.3d 461, 467 (S.D.N.Y. 2019).

To dispute the date the claims accrued in copyright cases, a defendant must produce

evidence "that would have been sufficient to awaken inquiry." *Michael Grecco Prods., Inc. v.*

*Valuewalk, LLC*, 345 F. Supp. 3d 482, 512 (S.D.N.Y. 2018) (finding that evidence in the record

was insufficient to determine when the statute of limitations began to run); *see also Merck &*

*Co. v. Reynolds*, 559 U.S. 633, 653 ("[T]he limitations period does not begin to run until the

plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts

constituting the violation' ... irrespective of whether the actual plaintiff undertook a reasonably

diligent investigation.").

Moreover, copyright owners do not have a general duty to police their copyrights. *See,*

*e.g., Wilson v. Dynatone Publ'g Co.*, 892 F.3d 112, 119 (2d Cir. 2018) ("An author is not under a duty to constantly monitor filings in the Copyright Office on pain of losing her copyright."); *Ranieri*, 164 F. Supp. 3d at 345 (holding that a copyright owner has no duty to police public records or activities); *H. M. Kolbe Co. v. Armgus Textile Co.*, 315 F.2d 70, 74 (2d Cir. 1963) (holding that a copyright owner has no affirmative duty to police subsequent distributions of his own product).

Recently, the Second Circuit again considered the bounds of the discovery rule in *Michael Grecco Productions, Inc. v. RADesign, Inc*., 112 F.4th 144 (2d Cir. 2024). First, the Court rejected the argument that the statute of limitations barred the plaintiff due to its "sophistication." *Id.* at 152. Rather, the Court established that "the discovery rule is the rule of accrual, not an equitable tolling or estoppel doctrine. The discovery rule is not an exception to the injury rule that only applies to some infringement claims; it is not a benefit for which only some plaintiffs qualify." *Id.* at 151. "Thus, to be timely, [Plaintiff] must have been unable, with the exercise of due diligence, to discover the infringing activity before October 12, 2018, three years *before the complaint was filed.*" *Id.* [italics in original]. Put differently, "[u]nder the discovery rule, a plaintiff has the length of time it takes, using due diligence, to discover the infringement; ***only from that point does the statute of limitations begin to run***." *Id.* (emphasis added).

Inquiry notice is not the same as constructive discovery for the purposes of accrual. Indeed, to so hold would make "due diligence" completely inoperative. As mentioned above, inquiry notice is the point at which a plaintiff receives information sufficient to *begin* investigating. *Merck, supra,* 559 U.S. at 653. It is not the point at which a copyright holder's diligent inquiry ends but where it starts. Copyright holders who are placed on inquiry notice

may well be time-barred if they fail to investigate or do so in a manner that is not reasonably diligent, but ultimately, "the answer to the discovery question turns on *due diligence*." *See* *RADesign*, 112 F.4th at 152 (emphasis in original). Additionally, the Second Circuit in *RADesign* rejected the idea that evidence of a copyright holder's sophistication could be used to prove the infringement should have been discovered earlier. *See id*. The Second Circuit stated that "[i]f anything…[Plaintiff's] allegations suggested…that it *was* exercising due diligence and thus its February 2021 discovery of [defendant]'s alleged infringement was as soon as diligently possible." *Id.* In other words, the date on which a reasonably diligent plaintiff discovers the infringement and the date on which a reasonably diligent plaintiff *would have* discovered the infringement are the same.

Yet Defendant tries to undermine the discovery rule. Defendant states in its Answer that the "limitations period generally begins to run at the point when the plaintiff can file suit and obtain relief. A copyright cause of action thus arises or accrues when an infringing act occurs."

The Answer goes on to assert:

> "Even if a different rule (e.g., the "discovery rule") were applied, Plaintiffs' causes of action would be barred, in whole or in part, because Plaintiffs either knew or should have known about the allegedly infringing uses more than three years prior to the filing of the Complaint. Plaintiffs, through their agents, first gave notice that they were aware of accused uses of music on March 3, 2021 (the "First Notice Date"), which is more than three years prior to the filing of the Complaint." (Dkt. 21.)

Defendant misstates both the law and the facts. First, as stated above, the Plaintiffs specifically excluded any infringements they discovered prior to July 19, 2021. *See* SMF ¶¶ 2, 43. Second, Defendant attempts to replace actual or constructive discovery of the infringement as the date from which the statute of limitations begins to accrue with inquiry notice of the *possibility* of infringement stemming from Defendant's earlier infringements on separate works.

Even taking the Defendant's position that the Plaintiffs were on inquiry notice as to the

other instances of infringement in spring 2021 – a position that the Plaintiffs reject for reasons stated below – this is not the period from which the accrual period would run. Rather, the date on which a reasonably diligent plaintiff would have discovered the infringements after receiving this inquiry notice would serve as the statute of limitations accrual date.

Plaintiffs possess rights to roughly a million works. Meanwhile, Defendant estimates its Twitter page alone averages 1,500 monthly posts, going back to 2009. SMF ¶ 69. Inquiring into every instance of Defendant's infringement is searching for a needle in a haystack. Defendant's apparent belief that a reasonably diligent plaintiff would and should have discovered each infringement immediately upon inquiry notice strains credulity. *See RADesign, supra,* 112 F.4th at 152 ("…even if the district court's 'sophisticated plaintiff' rationale is merely a presumption that sophisticated plaintiffs can discover infringements immediately or nearly so…the rationale remains flawed.").

Indeed, Plaintiffs acted with diligence to investigate Defendant's conduct and did discover additional acts of infringement within months of any purported initial inquiry notice. *See* SMF ¶¶ 27-52. Defendant has no facts to support the notion that Plaintiffs would have discovered the acts of infringement sooner if they had engaged in ***more diligent*** efforts. Plaintiffs invested significant resources in searching for copyright infringement. Considering the number of works they administer and the breadth of Defendant's social media and online presence, there is no reasonable argument that Plaintiffs did not act with reasonable diligence. Plaintiffs hired a sophisticated third-party TuneSat to look for and detect uses of Plaintiffs' works, including the Subject Works, in Defendant's content. SMF ¶ 27. TuneSat was not hired until May 2020. SMF ¶ 27. Once TuneSat identified detections, it performed an internal quality control check. After that, Kuhn reviewed each detection to determine whether it was, in fact, an

infringement. SMF ¶¶ 30-37. No earlier than spring 2021, when Kuhn sent their initial March 8, 2021 letter, were Plaintiffs aware of any actual infringement by Defendant. SMF ¶¶ 38-43. Nothing happened prior to early 2021 that could have put Plaintiffs on "inquiry notice" of the infringements in this case.

And, as discussed, "inquiry notice" is **<u>not</u>** "constructive notice." Following this notice in March 2021, Plaintiffs acted diligently to investigate additional infringements by Defendant. SMF ¶¶ 44-52. Those efforts could not happen instantaneously. Further, in some instances the Infringing Videos *were not even posted yet*. SMF ¶ 54.

It would be inappropriate and counter to the policy and purpose of the discovery rule and the Copyright Act to punish Plaintiffs for making every effort to discover infringing conduct by applying the earliest possible "inquiry notice" date and imputing constructive notice of all Infringing Uses on Plaintiffs the moment they became aware of a single potential infringement by Defendant. Plaintiffs "have no duty to scour the internet [to check] if anyone is using [works] without consent." *Minden Pictures, Inc. v. Conversation Prints, LLC*, No. 20-12542, 2022 WL 4667967, at *3 (E.D. Mich. Sept. 30, 2022) (citing *Masi v. Moguldom Media Grp. LLC*, 2019 WL 3287819, at *5 (S.D.N.Y. Jul. 22, 2019)). Requiring a plaintiff to continuously check and recheck a defendant's conduct because they are aware of another instance of infringement would impose such a duty. To do so would discourage Plaintiffs from investigating infringement, because, under such a regime, *every* infringement found would immediately start the "clock" to locate every other infringement by that same Defendant of any of that Plaintiffs' works.

Indeed, the date on which Plaintiffs' claims accrued should be the date when Kuhn determined that a detection it received from TuneSat identified an infringing use. SMF ¶¶ 47-48.

The earliest date that took place for the Infringing Uses is July 19, 2021. SMF ¶¶ 47-48. Plaintiffs filed three years from that date to ensure they sued within the statute as to the 10 Infringing Uses Kuhn identified on July 19, 2021. Moreover, most of the Infringing Uses (the remaining 25) were not discovered by TuneSat (as detections) or disclosed to Kuhn until well after July 19, 2021. SMF ¶¶ 49-52.

Defendant's attempt to impute "constructive knowledge" on Plaintiffs at some earlier date is baseless, and would undermine the discovery rule and improperly replace actual or constructive discovery with inquiry notice.

### B. Implied License, Acquiescence, Waiver and Estoppel, and Laches

The doctrines of acquiescence, waiver, estoppel, implied license, and laches are inapplicable here. Acquiescence, waiver, and estoppel must be manifested by overt acts. *See Tolliver v. McCants*, 684 F.Supp.2d 343, 347 (2010). Simple inaction is not sufficient. *See Lego A/S v. Best-Lock Const. Toys, Inc.*, 874 F.Supp.2d 75, 85-86 (2012). An implied license requires a "meeting of the minds between the parties to permit the particular usage at issue.'" *Psihoyos*, 855 F.Supp.2d at 124. Inaction by a party is not sufficient to establish such a "meeting of the minds."

It is unclear whether laches could apply, given the diligent efforts taken by Plaintiffs to protect their rights described above. At any rate, "in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief…" *Petrella,* 572 U.S. at 679. Plaintiffs commenced the action within the bounds of Section 507(b), and thus the defense does not apply.

### C. Fair Use and First Amendment

Defendant asserts the First Amendment as though it provides a separate affirmative defense than fair use. It does not. Fair use encompasses almost all First Amendment concerns in

copyright, except in perhaps the most extraordinary circumstances. *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1378 (2d Cir. 1993). Far from extraordinary, this dispute revolves around the most standard infringement claims.

To determine fair use, the statute provides four factors to be considered: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. Here, every factor weighs in Plaintiffs' favor as there was no transformation of the purpose and character of the use, the use was for a commercial purpose, and Defendant used the Subject Works verbatim and, in most cases, the most substantive portions of those works.

### D. Copyright Misuse and Failure to State a Claim

Defendant's final affirmative defense is copyright misuse. To begin with, it is unclear whether this is even recognized in the Second Circuit. *See O'Neil v. Ratajkowski*, 563 F.Supp.3d 112, 135 (2d Cir. 2021). In any event, it is inapplicable here. Copyright misuse applies when Plaintiffs attempt to use their copyright as leverage to impermissibly monopolize another area beyond the rights granted. *Michael Grecco Productions, Inc.*, 345 F.Supp.3d at 511. That is not the case here.

### <u>CONCLUSION</u>

Defendant Orlando Magic, Ltd. should be adjudged liable for willful copyright infringement. The case can then proceed to trial on the issue of Damages.

DATED: February 14, 2025                    **ANTHONY MOTTA ESQ**

By    _/s/ Douglas Johnson_
      Douglas Johnson

**ANTHONY MOTTA ESQ**
Anthony R. Motta (SBN 1678275)
211 East 43rd Street, 7th Floor
New York, NY 10017
Telephone:    (914) 589-5356
Email: amotta@anthonymotta.com

**JOHNSON & JOHNSON LLP**
Douglas L. Johnson (Admitted Pro Hac Vice)
Frank R. Trechsel (Admitted Pro Hac Vice)
439 N. Canon Dr. Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: djohnson@jjllplaw.com
            ftrechsel@jjllplaw.com