# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTIST PUBLISHING GROUP, LLC d/b/a APG, a Delaware Limited Liability Company; FIRST-N-GOLD PUBLISHING, INC., a Florida Corporation; LUKASZ GOTTWALD, an individual doing business as KASZ MONEY PUBLISHING; KMA ASSETS I LP, a Delaware Limited Partnership; KMA ASSETS II LIMITED, a United Kingdom Private Limited Company; KOBALT MUSIC PUBLISHING AMERICA, INC. d/b/a KMPA, a Delaware Corporation; MXM MUSIC AB d/b/a MXM, a Swedish Limited Liability Company; NOTTING HILL MUSIC, INC., a New York Corporation; and PRESCRIPTION SONGS, LLC, a California Limited Liability Company, <br><br> Plaintiffs, <br><br> v. <br><br> ORLANDO MAGIC, LTD. d/b/a ORLANDO MAGIC, a Florida Limited Partnership; and DOES 1-10, inclusive, <br><br> Defendants. | Case No: 1:24-CV-05461-JSR |

**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND OBJECTIONS TO PLAINTIFFS' SUMMARY JUDGMENT EVIDENCE**

Date:   New York, New York
        February 28, 2025

Respectfully submitted,

**BARNES & THORNBURG LLP**

By: */s/ Benjamin T. Pendroff*
David S. Slovick
New York Bar No. 5337811
390 Madison Avenue, 12th Floor
New York, New York 10017
Telephone:  (646) 746-2000
Facsimile:  (646) 746-2001
Email: David.Slovick@btlaw.com

Anna Kalinina *(admitted pro hac vice)*
Texas Bar No. 24092605
Benjamin T. Pendroff
New York Bar No. 5013982
2121 N. Pearl Street, Suite 700
Dallas, TX 75201-2469
Telephone: (214) 258-4200
Facsimile: (214) 258-4199
Email: Anna.Kalinina@btlaw.com
Email: bpendroff@btlaw.com

William Craver (*admitted pro hac vice*)
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 284-3771
Facsimile: (310) 284-3894
Email: wcraver@btlaw.com

***Counsel for Defendant Orlando Magic, Ltd.***

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

PROCEDURAL HISTORY ................................................................................................... 1

STATEMENT OF FACTS ..................................................................................................... 2

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT ......................................................................................................................... 5

A.  Genuine Issues of Material Fact Exist as to Plaintiffs' Ownership of the Copyrights at Issue **6**
    1.    Plaintiffs' defective evidence raises genuine issues of material fact regarding Plaintiffs' ownership of the Subject Songs.................................................................. **6**
    2.    Genuine issues of material fact exist regarding Plaintiffs' ownership shares in the Subject Songs................................................................................................................. **7**

B.  Genuine Issues of Material Fact Exist as to Whether the Magic Infringed Plaintiffs' Purported Copyright Interests. ............................................................................................ **8**
    1.    Three of the Accused Uses Could Not Have Infringed Because They Are Not Subject to the Copyright Act or U.S. Law....................................................................... **8**
    2.    A Genuine Issue of Material Fact Exists as to Whether the Magic's Use of the Subject Songs Constitutes Fair Use. ................................................................................ **9**
    3.    A Genuine Issue of Material Fact Exists as to Whether the Magic's Use of the Subject Songs was De Minimis. ...................................................................................... **11**

C.  Genuine Issues of Material Fact Exist as to Whether the Magic Acted Willfully. ............... **12**
    1.    Magic Employees Believed They Had the Right to Use the Subject Songs in the Accused Uses. .................................................................................................................... **12**
    2.    The Magic's Intellectual Property Rights and Litigation do not Evidence Willfulness. ......................................................................................................................... **15**

D.  Genuine Issues of Material Fact Exist With Respect to the Magic's Statute of Limitations Affirmative Defense. ........................................................................................................... **16**
    1.    Kobalt is Plaintiffs' Agent ......................................................................................... **16**
    2.    TuneSat and KLG are Kobalt's Agents ..................................................................... **17**
    3.    TuneSat and KLG's Knowledge is Imputed to Kobalt, and Therefore to All Plaintiffs.................................................................................................................................. **18**
    4.    A Copyright Infringement Claim Accrues on the Date on Which a Plaintiff (Directly or Through Its Agents) Knew, or Should Have Known With the Exercise of Diligence, That the Actions Constituting the Alleged Infringement Had Occurred......... **18**
    5.    Plaintiffs' Claims Accrued More Than Three Years Before They Filed the Complaint Because Their Agents Knew, or Should Have Known With the Exercise of Diligence, That the Actions Constituting the Alleged Infringement Had Occurred......... **19**

E.   Plaintiffs Have Failed to Meet Their Burden of Production With Respect to the Rest of the
     Magic's Affirmative Defenses. ........................................................................................ **21**
     1.     Implied License, Acquiescence, and Waiver and Estoppel. .................................. **22**
     2.     Laches ................................................................................................................ **23**
     3.     First Amendment ................................................................................................ **23**
     4.     Copyright Misuse ............................................................................................... **23**

F.   Objections to Plaintiffs' Summary Judgment Evidence ......................................................... **23**

**CONCLUSION** ................................................................................................................................ **24**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Armstrong v. Virgin Records, Ltd.*,
  91 F. Supp. 2d 628 (S.D.N.Y. 2000) ................................................................. 8

*Aulicno v. N.Y.C. Dep't of Homeless Servs.*,
  580 F.3d 73 (2d Cir. 2009) ............................................................................... 5

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
  758 F. Supp. 1522 (S.D.N.Y. 1991) ................................................................ 13

*Beastie Boys v. Monster Energy Co.*,
  112 F. Supp. 3d 31 (S.D.N.Y. 2015) ............................................................... 13

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
  448 F.3d 605 (2d Cir. 2006) ............................................................................. 9

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*,
  196 F. Supp. 3d 395 (S.D.N.Y. 2016) .............................................................. 13

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) .................................................................................... 9, 10

*Cariou v. Prince*,
  714 F.3d 694 (2d Cir. 2013) ........................................................................... 10

*Chevron Corp. v. Salazar*,
  275 F.R.D. 422 (S.D.N.Y. 2011) ..................................................................... 17

*Cunningham v. Cornell Univ.*,
  86 F.4th 961 (2d Cir. 2023) .............................................................................. 5

*F.D.I.C. v. Giammettei*,
  34 F.3d 51 (2d Cir. 1994) ............................................................................... 21

*Fallaci v. New Gazette Literary Corp.*,
  568 F. Supp. 1172 (S.D.N.Y. 1983) ................................................................ 13

*Fed. Ins. Co. v. Union Pac. R. Co.*,
  590 F. Supp. 1292 (C.D. Cal. 2008) ................................................................ 22

*Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*,
  507 F. App'x 26 (2d Cir. 2013) ....................................................................... 12

iii

*Fitzgerald Pub. Co. v. Baylor Pub. Co.*,
  807 F.2d 1110 (2d Cir. 1986) ............................................................... 13

*Island Software & Computer Serv., Inc.* .............................................. 13

*N.J. Media Group Inc. v. Pirro*,
  74 F. Supp. 3d 605 (S.D.N.Y. 2015) .................................................. 9, 10

*Parisienne v. Scripps Media, Inc.*,
  2021 WL 3668084 (S.D.N.Y. Aug. 17, 2021) .................................... 18, 20

*In re Parmalat Secs. Litig.*,
  375 F. Supp. 2d 278 (S.D.N.Y. 2005) .................................................... 17

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014) .................................................................. 20

*Sandoval v. New Line Cinema Corp.*,
  147 F.3d 215 (2d Cir. 1998) ............................................................ 11, 12

*Stone v. Williams*,
  970 F.2d 1043 (2d Cir. 1992) ................................................................ 18

*Swatch Group Mgmt. Servs. Ltd. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) ...................................................................... 9

*In re UFG Intern., Inc.*,
  225 B.R. 51 (S.D.N.Y. 1998) .................................................................... 6

*Unicolors, Inc. v Urban Outfitters, Inc.*,
  853 F.3d 980 (9th Cir. 2017) ................................................................. 13

*Veal v. Geraci*,
  23 F.3d (2d Cir. 1994) ............................................................... 17, 18, 19

*Walsh v. Townsquare Media, Inc.*,
  464 F. Supp. 3d 570 (S.D.N.Y. 2020) .................................................... 10

**Statutes**

17 U.S.C. § 107 ........................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 56 .................................................................................... 5, 21

Local Rule 56.1 .............................................................................. 11, 16, 24

iv

Defendant ORLANDO MAGIC, LTD. (the "Magic") respectfully submits this memorandum of law in Response to Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' Motion") and objections to Plaintiffs' summary judgment evidence and would respectfully show the Court the following:

## PRELIMINARY STATEMENT

Plaintiffs cannot show that, as a matter of law, the Magic willfully infringed Plaintiffs' copyright interests because genuine issues of material fact exist with respect to: (1) Plaintiffs' copyright ownership; (2) whether the Magic committed any infringing acts at all; and (3) whether the Magic acted willfully. Indeed, when the Court looks at the admissible evidence in the summary judgment record, it will show that the Magic had good reason to believe they *were allowed* to use Plaintiffs' works for a variety of reasons. But in any event, these issues of fact should be decided by a jury, not on summary judgment.

Furthermore, as demonstrated in the Magic's Partial Motion for Summary Judgment (the "Magic's Motion"), there is no question that the Magic's statute of limitations defense is not subject to Plaintiffs' Motion. Finally, Plaintiffs have not even attempted to meet their initial burden of production with respect to summary judgment on the Magic's remaining affirmative defenses, all of which should survive Plaintiffs' Motion. Accordingly, the Court should deny Plaintiffs' Motion in its entirety and sustain the Magic's objections to Plaintiffs' summary judgment evidence.

## PROCEDURAL HISTORY

On July 18, 2024, Plaintiffs filed their Original Complaint asserting copyright infringement against the Magic. (Doc. 1, "Complaint"). The Magic filed its Answer to the Complaint on October 15, 2024, denying Plaintiffs' allegations and asserting various affirmative defenses, including but not limited to, statute of limitations, fair use, waiver and estoppel, and

laches. (Doc. 21). On February 7, 2025, the Magic filed its Notice of Defendant's Motion for Partial Summary Judgment. (Doc. 41). Despite the Court's clear February 7, 2025 deadline to file notice of summary judgment motions (Doc. 24 at 3), Plaintiffs filed their Notice on February 10, 2025—three days late. (Doc. 42).[1]

The parties each filed a Motion for Partial Summary Judgment on February 14, 2025. (Docs. 44–71). A week later—on February 21, 2025—Plaintiffs admitted that they had failed to file a key declaration of Erica Carvajal Wong in a timely manner, and filed and served it for the first time.[2] The late-filed Wong Declaration contains the crucial TuneSat reports that purport to substantiate Plaintiffs' detection of songs on social media posts; without the Wong declaration, this evidence is inadmissible.[3]

## STATEMENT OF FACTS

The Magic incorporates by reference the entirety of the Magic's Motion and all exhibits and declarations thereto. In addition to the Statement of Facts in the Magic's Motion, the Magic would further show the following:

### A. The Accused Uses[4]

The Accused Uses in Exhibit 1 of the Complaint date back well over ten years ago. Magic's Resp. to Plaintiffs' SOMF ¶ 72. Only two of the Accused Uses were uploaded after

---

[1] Plaintiffs filed their First Amended Complaint on February 12, 2025, alleging the same Accused Uses as in the Original Complaint. (Doc. 43). The First Amended Complaint corrected an error in one Plaintiff's name. For purposes of this Response, the Magic refers to the "Complaint," without differentiating between the Original and First Amended Complaints.

[2] *See* Notice of Errata in Relation to Plaintiffs' Motion for Partial Summary Judgment. (Doc. 72).

[3] Exhibit 13 to the Magic's Motion also contains detection results. (Doc. 70-14). However, Exhibit 13 is meant to show when Plaintiffs should have been on notice of their claims for purposes of statute of limitations. The Magic does not concede that Exhibit 13 confirms any infringement.

[4] Unless otherwise noted, capitalized terms herein have the same meaning as in the Magic's Motion.

2020, with one uploaded in 2023 and one in 2024. *Id.* Accused Uses Nos. 3, 4, and 19 in Exhibit 1 of the Complaint were created and posted in Brazil, by a marketing company, SAMBA Services ("SAMBA"), with whom the Magic contract. *Id.* ¶ 73. As part of their engagement, SAMBA's team in Brazil makes content that is posted on the Brazilian social media accounts. *Id*. All content decisions are made by SAMBA and the content is physically posted by SAMBA's team located in Brazil. *Id*.

**B.    The Magic's Use of the Subject Songs in the Accused Uses**

The Accused Uses were not posted as advertisements. *Id.* ¶ 74. Nor is there any evidence that the Magic monetized the Accused Uses. *Id*. And while the Accused Uses contain music, the Magic understand that "there is a significant amount of social media users [] that view . . . their social media without the sound on." *Id*. Although the Magic had a library of production music (through Killer Tracks), that library was for "broadcast and radio use," and at that time, "video was barely even posted on the internet." *Id.* ¶ 75. It was not until 2018 or 2019 that social media was even included in the Killer Tracks agreement, and it was only included for paid "advertising purposes," which would not include the Accused Uses. *Id*.

During the time that all but two of the Accused Uses were posted, the Magic's understanding was that its "performance license would have covered any of the use[s]" of the Subject Songs in the Accused Uses. *Id.* ¶ 76. Magic employees believed that "something that was captured in arena during one of [their] games," was "covered under [the team's] performance license in arena." *Id*. At that time, they believed that the Magic's "license with the NBA and performance license," gave them clearance to use the music in the Subject Songs. *See Id*. The general understanding of Magic employees was that they had a "blanket license for in arena use" of songs. *Id*. The Magic's corporate representative testified that the Magic are not aware of

3

anyone who posted a video that thought he or she was not permitted to do so. *Id*.

There "is a different understanding now than there [] was in the past" with respect to what music a user could post to social media. *Id*. ¶ 77. Magic employees posted Accused Works on "platforms [that] did allow and enable users to use certain music in their content," whereas now, "the platforms . . . will prevent [] specific uses of music that they previously did not." *Id*. For example, the Magic understood that TikTok "allowed all accounts including commercial to use any music on their platform," because users had the "ability to [] insert the music within the app. It was the understanding that [] TikTok likely had the license that would allow accounts to do that." *Id*. ¶ 78. This is what happened when a Magic employee posted an Accused Use in 2024. *Id.* The employee "uploaded a picture to the Instagram Application, where [she] was given the option . . . to insert the music in the video." *Id.* The employee "believed this music was cleared for the [] Magic's use by Instagram because there was no warning regarding this feature not being usable by the [] Magic or needing to obtain any additional license to use this music in this Instagram Story." *Id*. And in 2023, a Magic employee posted an Accused Use after searching the YouTube Application for royalty-free music and finding, what he believed, was a "similar sounding instrumental track that was pre-cleared by YouTube for use by all YouTube users," but not the actual Subject Song, "I'm a Boss." *Id.* ¶ 79.

### C. Plaintiffs' Agreements With Social Media Platforms

The majority of the Accused Uses were posted on social media sites governed by agreements with publishers and administrators like Kobalt. After the discovery period closed in this action, Plaintiffs belatedly produced hand-picked examples of social media licenses between Kobalt on the one hand, and Facebook, Meta, Google, and TikTok on the other. Magic's Resp. to Plaintiffs' SOMF ¶ 80. These licenses contain language indicating that the Accused Uses ███

███████████████████████████████ and therefore did not infringe. *Id.*

Furthermore, Kobalt's agreement with Google/YouTube contains an ██████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.* ¶ 81.

## LEGAL STANDARD

### A. Summary Judgment

As stated in the Magic's Motion, summary judgment on part of a claim shall be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Cunningham v. Cornell Univ.*, 86 F.4th 961, 980 (2d Cir. 2023) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). And an "issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Cunningham*, 86 F.4th at 980 (internal quotation marks omitted). Overall, the Court "construe[s] the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Aulicno v. N.Y.C. Dep't of Homeless Servs.*, 580 F.3d 73, 79–80 (2d Cir. 2009) (internal quotation marks omitted).

## ARGUMENT

The Court should deny Plaintiffs' Motion because Plaintiffs have not shown as a matter of law that they are the legal or beneficial owners of the copyrights at issue or that the Magic willfully infringed those copyrights. Furthermore, Plaintiffs cannot show that the Magic lack evidence of any element of its affirmative defenses. Therefore, Plaintiffs' Motion should be denied in its entirety.

**A. Genuine Issues of Material Fact Exist as to Plaintiffs' Ownership of the Copyrights at Issue.**

    1. <u>Plaintiffs' defective evidence raises genuine issues of material fact regarding Plaintiffs' ownership of the Subject Songs.</u>

As Plaintiffs concede, only the legal or beneficial owner of an exclusive copyright right may institute an action for infringement. Plaintiffs' Motion at 14. Thus, Plaintiffs must prove their ownership interests for each of the Subject Songs. But the evidence raises genuine issues of material fact as to Plaintiffs' ownership interests. For example, in support of its argument that it has copyright interests in eleven of the Subject Songs, APG submitted a declaration purportedly signed by Caitlyn Miles, but the named declarant is Brett Copell. *See* Plaintiffs' Statement of Material Facts ("Plaintiffs' SOMF") ¶ 1 (Docs. 48, 64). Indeed, Plaintiffs' SOMF cites the "Declaration of Brett Copell," and makes no mention of Caitlyn Miles. *Id.* Because the declarant and the signatory are different, the declaration and the exhibits attached thereto are defective and therefore none are competent summary judgment evidence of APG's copyright interests. Moreover, the Magic objects to the document filed as the "Declaration of Caitlyn Miles" (Docs. 48, 64) and the exhibits attached thereto and moves the Court to strike them from the summary judgment record.

Prescription's evidence is similarly defective with respect to the eight Subject Songs in which it claims copyright interests. Prescription submitted a declaration in support of its purported copyright interests but the declarant offered her statements about the songs' authorship "on information and belief," rather than on personal knowledge. *See* Plaintiffs' SOMF ¶ 1, (Docs. 54, 68). Such statements are not competent summary judgment evidence and cannot support Prescription's claims of copyright interests because Prescription cannot prove chain of title. *See In re UFG Intern., Inc.*, 225 B.R. 51, 58 (S.D.N.Y. 1998) (declaration insufficient where claims made on information and belief). The Magic objects to the declaration of Diana Sanders (Docs.

54, 68) and the exhibits attached thereto and moves the Court to strike them from the summary judgment record.

Plaintiffs KMA Assets I LP and KMA Assets II Limited similarly rely on defective, and therefore inadmissible, summary judgment evidence to try and prove their ownership interests. Both Plaintiffs rely on the Declaration of James Arnay. Plaintiffs' SOMF ¶¶ 1, 6, 13, 14, 16 (Docs. 50, 66, 66-5, 66-10). Mr. Arnay asserts that "KMA Assets I LP obtained rights through a purchase agreement in the works "A Little Party Never Killed Nobody (All We Got)," and relies on Exhibit 10 to his declaration. *Id.* ¶ 13 (Docs. 50, 66, 66-10). However, KMA Assets I LP is not a party to the Asset Purchase Agreement at Exhibit 10 to his declaration. And while Mr. Arnay asserts that KMA Assets II Limited obtained rights through a purchase agreement in 'I Love It (feat. Charli XCX)'" KMA Assets II Limited is not a party to the agreement at the referenced Exhibit 5. *Id.* ¶ 14 (Docs. 50, 66, 66-5). Therefore, any ownership interests asserted by KMA Assets I LP and KMA Assets II Limited to the respective Subject Songs are unsupported by competent summary judgment evidence.

2. <u>Genuine issues of material fact exist regarding Plaintiffs' ownership shares in the Subject Songs.</u>

Plaintiffs baldly assert that they have "exclusive rights" to the Subject Songs. *See* Plaintiffs' Motion at 8–9. However, Plaintiffs have not provided competent summary judgment evidence of their respective percentages of ownership, if any, of the Subject Songs, and therefore a genuine issue of material fact exists as to Plaintiffs' ownership interests in the Subject Songs.

The following chart illustrates Plaintiffs' claims:

| Plaintiff | Number of Subject Songs | Accused Use Nos. (as listed in Ex. 1 to Complaint) |
|-----------|-------------------------|----------------------------------------------------|
| APG | 11 | 1–18 |

| Prescription | 8 | 29–37 |
|---|---|---|
| Kasz | 4 | 33–37 |
| Notting Hill | 3 | 22, 26–28 |
| FNG | 3 | 19, 20, 27, 28 |
| KMA Assets I LP | 2 | 18, 22 |
| KMA Assets II Limited | 1 | 23 |

Because genuine issues of material fact exist as to Plaintiffs' ownership interests in the

Subject Songs, summary judgment on Plaintiffs' copyright infringement claim is improper.

**B. Genuine Issues of Material Fact Exist as to Whether the Magic Infringed Plaintiffs' Purported Copyright Interests.**

There are several reasons why the Magic's use of the Subject Songs would not amount

to infringement and Plaintiffs' Motion fails to prove as a matter of law that the Magic infringed.

1. <u>Three of the Accused Uses Could Not Have Infringed Because They Are Not Subject to the Copyright Act or U.S. Law.</u>

Three of the Accused Uses were posted in Brazil, by a Brazilian marketing company, and

therefore cannot have infringed Plaintiffs' rights under the Copyright Act because these foreign

posts are not subject to United States Copyright law. *See* Magic's Resp. to Plaintiffs' SOMF,

¶ 73. Use Nos. 3, 4, and 19 listed in Exhibit 1 to the Complaint were posted by a third-party

contractor in Brazil to Brazilian social media accounts. *Id*. All content decisions were made by

the Brazilian company and the content was physically posted by the company's team located in

Brazil. *Id.* Plaintiffs brought this action pursuant to United States copyright law and "it is not

seriously disputed that United States copyright laws do not have extraterritorial effect, and that

infringing acts that take place entirely outside of the United States are not actionable under our

copyright laws." *Armstrong v. Virgin Records, Ltd.*, 91 F. Supp. 2d 628, 634 (S.D.N.Y. 2000)

(collecting cases). As Plaintiffs have not even addressed the propriety of prosecuting claims of alleged extraterritorial infringement, a genuine issue of material fact exists precluding summary judgment as to these three Accused Uses.

    2.   A Genuine Issue of Material Fact Exists as to Whether the Magic's Use of the Subject Songs Constitutes Fair Use.

The "fair use doctrine is a statutory exception to copyright infringement." *Bill Graham Archives v. Dorling Kindersley Ltd.,* 448 F.3d 605, 608 (2d Cir. 2006). A determination of fair use requires a case-by-case analysis not subject to "rigid application of the copyright statute." *Id.* ("[w]hether such 'fair use' exists involves a case-by-case determination using four non-exclusive, statutorily provided factors in light of the purposes of copyright"); *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 577 (1994) (citation omitted). Factors courts consider when analyzing fair use include:

> "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for value of the copyrighted work."

*Campbell*, 448 F.3d, at 608, citing 17 U.S.C. § 107. The "determination of fair use is a mixed question of fact and law." *Swatch Group Mgmt. Servs. Ltd. v. Bloomberg L.P.*, 756 F.3d 73, 81 (2d Cir. 2014). A defendant arguing fair use "need not establish that each of the factors set forth in § 107 weighs in their favor." *Id.* (citation omitted). Here, these factors weigh in favor of the Accused Uses being fair use of the Subject Songs.

Whether a work is used for commercial purposes is not dispositive, and it would be error to give that factor such weight. *Campbell*, 510 U.S. at 584. Furthermore, Plaintiffs' argument that the Magic is a commercial entertainment business (Plaintiffs' Motion at 9) does not, by itself, mean that the Accused Uses were for commercial purposes. *See N.J. Media Group Inc. v.*

*Pirro*, 74 F. Supp. 3d 605, 618 (S.D.N.Y. 2015) (mere fact that defendant operated a for-profit business and that its social media page "is intended to capture revenues for the [business], is insufficient for a finding in Plaintiff's favor"). Indeed, there is no evidence that the Magic monetized the Accused Uses. *See* Magic's Resp. to Plaintiffs' SOMF ¶ 74. And while the first factor analyzes whether the use is transformative, "transformative use is not absolutely necessary for a finding of fair use." *Campbell*, 510 U.S. at 579. Plaintiffs should not be able to paint all of the Accused Uses with a broad brush and deny the jury the right to see the uses for themselves and determine whether they are transformative and if they constitute a commercial use.

The second fair use factor is the nature of the copyrighted work. When examining this factor, courts generally look at (1) "whether the work is expressive or creative" and (2) whether the work is published or unpublished. *Pirro*, 74 F. Supp. 3d at 619. Here, many of the Accused Uses were simply social media posts of music played in the Magic's arena, *i.e.*, they were not "creating" or "expressing" anything, they were merely in the background of other events (*e.g.*, a basketball game or mascot event). Accordingly, the second factor favors fair use.

The amount and substantiality of the portion used in relation to the copyrighted work as a whole favors a finding of fair use. Many of the Accused Uses are short social media posts using just a small portion of the Subject Songs (or played at barely audible volumes), and no more of the Subject Songs were taken than necessary. *Walsh v. Townsquare Media, Inc.*, 464 F. Supp. 3d 570, 586 (S.D.N.Y. 2020) (finding third factor weighed in favor of fair use).

The final factor in examining fair use is the effect of the use upon the potential market for value of the copyrighted work. Here, this factor favors fair use because the Magic has not "usurped the market for [the Subject Songs] including the derivative market" and the Magic's target audience and the nature of the Accused Works is not the same as the original. *See Cariou*

10

*v. Prince*, 714 F.3d 694, 709 (2d Cir. 2013). There is no obvious correlation between Magic basketball fans and the audience for the Subject Songs. Indeed, the Magic often posts social media content knowing that "a significant amount of social media users" view "their social media without the sound on." *See* Magic's Resp. to Plaintiffs' SOMF, ¶ 74. There is no showing here that the Magic, through the Accused Uses, usurped the market for the Subject Songs. Thus, the fourth factor weighs in favor of fair use.

This case involves dozens of different Accused Uses.[5] Assuming Plaintiffs' exhibits containing the Accused Uses are admissible, the Magic's fair use of "Type of Way" (Accused Use No. 15 in the Complaint) is but one example of why the Magic did not infringe. A viewing of this Accused Use reveals that the song Type of Way may be faintly heard in the background of a Magic newscast. Doc. 55 ¶ 4(o); Plaintiffs' Ex. 14-1. The song is barely audible and fails to add anything of value to the video. This video is plainly why Plaintiffs do not attempt to prove infringement for each of the Accused Uses, rather, they put them all in one box and say that there was no fair use for any of them. But that argument usurps the role of the jury who should hear and view the Accused Uses and make a fair use determination for themselves. A genuine issue of material fact exists as to whether the Accused Uses are covered by the fair use doctrine and summary judgment on infringement, and the Magic's affirmative defense of fair use, should be denied.

3. A Genuine Issue of Material Fact Exists as to Whether the Magic's Use of the Subject Songs was De Minimis.

A de minimis use of copyright material is not legally actionable. *Sandoval v. New Line*

---

[5] Plaintiffs submitted as exhibits purported copies of the Accused Uses but fail to address the Accused Uses individually in their Statement of Material Facts, as required by Local Rule 56.1. Accordingly, the Magic objects to Exhibits 3-1 through 38-1 and moves the Court to strike them from the summary judgment record.

*Cinema Corp.*, 147 F.3d 215, 217 (2d Cir. 1998) (holding defendants' use of copyrighted materials was de minimis). The use of copyrighted material is de minimis if it falls "below the quantitative threshold of substantial similarity," based on the "observability of the copyrighted work in the allegedly infringing work." *Id*. (internal quotation marks omitted). Determinations of de minimis use are "made on a case-by-case basis, as there are no bright-line rules for what constitutes substantial similarity." *Id*.

As noted above, many of the Accused Uses contain no more than seconds of the Subject Songs. For example, very little of the Subject Song "All the Way Up" (in Accused Use No. 20 in the Complaint) is heard, for approximately 35 seconds, at a barely audible volume, as in-arena background music for a performance by the Magic's mascot. *See* Doc. 55 ¶ 4(u); Plaintiffs' Ex. 22-1. This is just one example of how the focus of the Accused Works is not the music playing in them, but the action in the video. Based on investigation by the Magic, "there is a significant amount of social media users [] that view . . . their social media without the sound on." Magic's Resp. to Plaintiffs' SOMF ¶ 74. Therefore, the Subject Songs are primarily incidental to the action in the video in the Accused Uses and should be deemed de minimis. At a minimum, a genuine issue of material fact exists as to whether the Accused Uses are de minimis and a jury should make that determination.

### C. Genuine Issues of Material Fact Exist as to Whether the Magic Acted Willfully.

1. Magic Employees Believed They Had the Right to Use the Subject Songs in the Accused Uses.

Plaintiffs cannot show as a matter of law that the Magic willfully infringed any of the Subject Songs. Indeed, it is telling that Plaintiffs do not cite any case law *granting summary judgment on willfulness* against a copyright infringement defendant.[6] To the contrary, Plaintiffs

---

[6] *Fendi Adele, S.R.L. v. Ashley Reed Trading, Inc.*, 507 F. App'x 26 (2d Cir. 2013), is a trademark

cite case law supporting the Magic's position that willfulness should be decided by a jury. In *Island Software & Computer Serv., Inc.*, the Second Circuit held that the district court erred in granting summary judgment on *willfulness* because "at the summary judgment stage," even where an "inference of constructive knowledge or reckless conduct seems the better of the possible inferences that can be drawn, [the court] must still draw all inferences in favor of the non-moving party." 413 F.3d 257, 264 (2d Cir. 2005) (holding evidence did not show willfulness as a matter of law). If it is even possible that a reasonable jury would find that the Magic did not act willfully, then "summary judgment on the issue of willfulness is inappropriate." *Id.* at 264.

As in that case, the Court must draw all inferences here in the Magic's favor. The general understanding of Magic employees was that they were allowed to use the Subject Songs in the Accused Uses for multiple reasons. According to the Magic's corporate representative, the Magic's understanding was that the "performance license would have covered any of the use[s]" of the Subject Songs in the Accused Uses. Magic's Resp. to Plaintiffs' SOMF ¶ 76. Magic employees believed that "something that was captured in arena during one of [their] games," was "covered under [the team's] performance license in arena." *Id.* At that time, they believed that the Magic's "license with the NBA and performance license," gave them clearance to use the music in the Subject Songs. *See id.* The general understanding of Magic employees was that they had a "blanket license for in arena use" of songs. *Id.* The Magic's corporate representative

---

infringement case where the defendant continued selling counterfeit handbags after being told of infringement and then failed to adequately inquire about the authenticity of the bags or maintain records of transactions, and returned the bags to suppliers after Plaintiff filed suit. None of the following cases cited by Plaintiffs decided willfulness on summary judgment: *Fitzgerald Pub. Co. v. Baylor Pub. Co.*, 807 F.2d 1110 (2d Cir. 1986); *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991); *BWP Media USA, Inc. v. Gossip Cop Media, Inc.*, 196 F. Supp. 3d 395 (S.D.N.Y. 2016); *Unicolors, Inc. v Urban Outfitters, Inc.*, 853 F.3d 980 (9th Cir. 2017); *Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172 (S.D.N.Y. 1983); or *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31 (S.D.N.Y. 2015).

testified that the Magic is not aware of anyone who posted a video that thought he or she was not permitted to do so. *Id*.

While Plaintiffs want to assign blame to the Magic with the benefit of hindsight, "there is a different understanding now than there [] was in the past" with respect to what music a user could post to social media. *Id*. ¶ 77. Furthermore, Magic employees posted Accused Works on "platforms [that] did allow and enable users to use certain music in their content," whereas now, "the platforms . . . will prevent [] specific uses of music that they previously did not." *Id*. For example, it was the Magic's understanding that "TikTok allowed all accounts including commercial to use any music on their platform," because users, like Magic employees, had the "ability to [] insert the music within the app. It was the understanding that [] TikTok likely had the license that would allow accounts to do that." *Id*. ¶ 78.

Plaintiffs will likely respond that two of the Accused Uses were posted in 2023 and 2024, years after Plaintiffs put the Magic on notice of alleged infringement. But the 2023 post was posted by an employee who "searched in the YouTube Application for royalty-free music and found the instrumental track that [he] inserted into the video" which he "believed was cleared for the [] Magic's use." Resp. to Plaintiffs' SOMF ¶ 79. The employee who posted the video in 2023 "did not believe this track was the Meek Mill song 'I'm a Boss' at the time that [he] posted it," and he thought it was "pre-cleared by YouTube for use by all YouTube Users." *Id.*[7] And the 2024 Accused Work was posted by an employee who "believed this music was cleared for the [] Magic's use by Instagram because there was no warning regarding this feature not being usable by the [] Magic or needing to obtain any additional license to use this music in this Instagram Story." Magic's Resp. to Plaintiffs' SOMF ¶ 78. Neither of these instances evidence willfulness

---

[7] Additionally, this use is covered by Kobalt's covenant not to sue Google's users. *See* Magic's Resp. to Plaintiffs' SOMF ¶ 81.

as a matter of law.

Based on the summary judgment evidence, the Magic's employees believed that they had the right to use the Subject Songs in the Accused Uses, either because they were covered by the in-arena performance license, the social media platform allowed them to use the music, or they thought they had found a royalty-free version of the music. Drawing all inferences in the Magic's favor—as the Court must at the summary judgment stage—there exist genuine issues of material fact regarding the Magic's willfulness and summary judgment on this issue should be denied.

2. The Magic's Intellectual Property Rights and Litigation do not Evidence Willfulness.

For the reasons stated above, it is of no consequence that the Magic protects its own intellectual property. The Magic is not arguing that its employees were completely unaware of copyrights, rather, there is a fact issue regarding whether the employees who posted the Accused Works believed that the Accused Works were either covered by the in-arena license or otherwise permissible because the Subject Songs were royalty-free or available on social media platforms.

Plaintiffs then go on to mischaracterize the Magic's testimony. The Magic's corporate representative did not testify that the Magic are "sophisticated" for any purpose other than the area in which it does business—namely, professional basketball. Magic's Resp. to Plaintiffs' SOMF ¶ 60. And the Magic's testimony regarding its own library of production music is misleading as well, because the "Killer Tracks" library was for "broadcast and radio use" and "at that time video was barely even posted on the internet." *Id.* ¶ 75. It was not until 2018 or 2019 that social media was even included in the Killer Tracks agreement, and it was only included for paid "advertising purposes," which would not include the Accused Uses. *Id*.

Finally, Plaintiffs mischaracterize the Magic's testimony regarding past copyright infringement suits. Plaintiffs argue that the Magic must have willfully infringed the Subject

Songs because the Magic "has been the subject of copyright litigation for the infringing use of music in the past," (Plaintiffs' Motion at 22), but they cherry-picked selected testimony. Indeed, when asked if "Orlando has ever been sued before for trademark or copyright infringement," the Magic corporate representative responded "I don't know of specifics, no." Magic's Resp. to Plaintiffs' SOMF ¶ 68.

A reasonable jury could conclude that the Magic did not act willfully, therefore summary judgment on willfulness is inappropriate.

**D. Genuine Issues of Material Fact Exist With Respect to the Magic's Statute of Limitations Affirmative Defense.**

The Magic's Motion describes at length why Plaintiffs' claims are barred by the applicable three-year statute of limitations and the Magic rely on that argument and incorporate it herein for all purposes. However, without assuming the burden of proving its statute of limitations defense for purposes of this response to Plaintiffs' Motion, for the Court's convenience, and in an abundance of caution, below are the salient points of the Magic's statute of limitations argument to show that Plaintiffs cannot show a lack of evidence of any element of this defense.[8]

1. Kobalt is Plaintiffs' Agent[9]

Kobalt acts on each Plaintiff's behalf to ███████████████████████████ ██████████████████████████████████ granted to it under the Administration Agreements. SOMF ¶ 2. Through the Administration Agreements, the other Plaintiffs granted Kobalt the right to search for infringing uses of Plaintiffs' copyright interests. *See, e.g.*, *id.* ¶ 3 However, Plaintiffs still direct at least some of Kobalt's administrative duties. Thus, Kobalt is

---

[8] References to "SOMF ¶_" are to the Magic's Rule 56.1 Statement of Material Facts, filed February 14, 2025 (Docs. 63, 65).

[9] Complete discussion at Magic's Motion pp. 9–10.

the agent for each of the other Plaintiffs with respect to investigation and prosecution of copyright infringement—the exact issue before the Court.

    2.  <u>TuneSat and KLG are Kobalt's Agents</u>[10]

On May 8, 2020, TuneSat became Kobalt's agent through an agreement in which TuneSat would attempt to detect performances of Kobalt's audio recordings being exploited on the Internet and ███████████████████████████████████████████████████████ ████████████████████████████████████████████████████. SOMF ¶ 24; Ex. A.[11] In their agreement, Kobalt granted TuneSat the right ████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ SOMF ¶ 28 (emphasis added). When KLG and Kobalt signed their July 13, 2020 engagement letter (SOMF ¶ 31),[12] KLG became Kobalt's agent. *Chevron Corp. v. Salazar*, 275 F.R.D. 422, 426 (S.D.N.Y. 2011); *Veal v. Geraci*, 23 F.3d, 722, 725 (2d Cir. 1994). Moreover, TuneSat and Kobalt jointly engaged KLG to ████████████████████ ████████████████████████ SOMF ¶ 31. TuneSat and KLG both act on Kobalt's behalf and Kobalt maintains control over how TuneSat acts and how KLG acts on TuneSat and Kobalt's behalf. Therefore, Kobalt is the principal for its agents TuneSat and KLG. *See In re Parmalat Secs. Litig.*, 375 F. Supp. 2d 278, 290, 302 (S.D.N.Y. 2005).

---

[10] Complete discussion at Magic's Motion pp. 10–11.
[11] Ex. A is the same document as Exhibit 11 to the Magic's Motion (Doc. 70-11). The Magic append it here for the Court's ease of reference.
[12] Ex. D is the same document as Exhibit 15 to the Magic's Motion (Doc. 70-16). The Magic append it here for the Court's ease of reference.

3. <u>TuneSat and KLG's Knowledge is Imputed to Kobalt, and Therefore to All Plaintiffs.[13]</u>

An agent's knowledge is imputed to its principal. *Veal*, 23 F.3d at 725. In *Veal*, the Second Circuit held that a plaintiff's claim was barred by the applicable three-year statute of limitations where the plaintiff's lawyer was aware of the conduct underlying the claim more than three years before the claim was filed, irrespective of whether the plaintiff, individually, had direct knowledge. *Id.* at 724–25.

4. <u>A Copyright Infringement Claim Accrues on the Date on Which a Plaintiff (Directly or Through Its Agents) Knew, or Should Have Known With the Exercise of Diligence, That the Actions Constituting the Alleged Infringement Had Occurred.[14]</u>

A plaintiff need not know of the "legal rights that stem from certain facts or circumstances," it is sufficient that the plaintiff knows, or should know, "the facts or circumstances themselves." *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992). In other words, a plaintiff need only be aware of facts that *could* offer legal relief, but accrual does not wait for a plaintiff or her counsel to decide whether a claim is actionable. Indeed, so long as a plaintiff "knows, or should know, enough of the critical facts of injury and causation to protect himself by ***seeking legal advice***," his claim accrues. *Parisienne v. Scripps Media, Inc.,* 2021 WL 3668084, at *4 (S.D.N.Y. Aug. 17, 2021) (emphasis added) (citation omitted). Here, Plaintiffs cannot claim that knowledge was not imputed while KLG took its time making a legal determination of infringement because "legal rights that stem from certain facts or circumstances need not be known, only the facts or circumstances themselves." *Stone v. Williams*, 970 F.2d at 1049. Plaintiffs know this, which is why they only halfheartedly argue—without any legal support—that their claims accrued "when Kuhn determined that a detection it received from

---

[13] Complete discussion at Magic's Motion p. 11.
[14] Complete discussion at Magic's Motion p. 12.

TuneSat identified an infringing use." Plaintiffs' Motion at 28.

5. <u>Plaintiffs' Claims Accrued More Than Three Years Before They Filed the Complaint Because Their Agents Knew, or Should Have Known With the Exercise of Diligence, That the Actions Constituting the Alleged Infringement Had Occurred.[15]</u>



Here, TuneSat and KLG's knowledge of the facts underlying the Magic's alleged infringement is imputed to Kobalt as their principal. KLG was ██████████ ██████████—one of which was the Magic. As discussed at length in the Magic's Motion, before July 18, 2021 (three years prior to the filing of the Complaint), TuneSat ███████████████████████████████ ████████████████████. SOMF ¶¶ 20, 38; *see* Ex. C, TuneSat detection results;[16] *see also* Ex. B, Deposition Testimony of Chris Woods at 60:5-8.[17]

Because TuneSat had been engaged to ██████████████████ ██████, its knowledge was imputed to Kobalt as the principal; whether Kobalt (or KLG) had actual knowledge of the ████████ at that time is immaterial—it is enough that Kobalt's agent had knowledge of ████████. *Veal*, 23 F.3d at 725. And for the same reasons, each Plaintiff suing based on one of the Accused Uses ████████ ████ is deemed to have had knowledge of the alleged infringement by that date because Kobalt is the agent of each individual Plaintiff for this purpose.

Long before July 18, 2021, ████████████████████████. *See* SOMF ¶¶ 39, 40; Ex. C, TuneSat detection results. Thus, in addition to ████████

---

[15] Complete discussion at Magic's Motion pp. 13–17.
[16] Ex. C is the same document as Exhibit 13 to the Magic's Motion (Doc. 70-14); however, the Magic append it here for the Court's ease of reference. Again, this document shows only when Plaintiffs should have been on notice of their claims, it does not in any way prove infringement.
[17] Ex. B contains excerpts from the deposition testimony of Chris Woods, a complete transcript of which is found at Exhibit 12 to the Magic's Motion (Docs. 70-12, 70-13). The Magic append Ex. B here for the Court's ease of reference.

████████████████████████████████████████████████████

████████████████████. SOMF ¶ 40.

Given that TuneSat ████████████████████████████████,
TuneSat plainly should have discovered the additional alleged infringements almost
immediately. SOMF ¶¶ 35, 40. *See Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120, 124 (2d
Cir. 2014) (infringement claim accrues when copyright holder discovers, or with due diligence
should have discovered, the infringement).

Plaintiffs purport to counter these facts with the late-filed declaration of Erica Carvajal
Wong and the exhibits filed at Docket Numbers 57 through 57-8. This declaration was filed on
February 21, 2025, seven days after the Court's deadline for dispositive motions. Accordingly,
the Magic object to the late-filed declaration and all of the exhibits purporting to be attached to
it and move the Court to strike same from the summary judgment record.

To be clear, the accrual of a claim for statute of limitations purposes does not depend on
whether a plaintiff actually investigated that specific claim; rather, the claim accrues (and the
statutory time period starts) if a reasonably diligent plaintiff would have discovered the Accused
Uses with an investigation. *See Parisienne*, 2021 WL366808, at *3 (citing *Merck & Co. v.
Reynolds*, 559 U.S. 633, 653 (2010)). "The standard for whether a plaintiff should have
discovered the relevant infringement is an objective one." *Id.* quoting *Masi v. Moguldom Media
Grp. LLC*, 2019 WL 328&819, at *5 (S.D.N.Y. July 22, 2019). Accordingly, Plaintiffs have
failed to demonstrate that the Magic lack evidence of an element of its statute of limitations
defense.

### E. Plaintiffs Have Failed to Meet Their Burden of Production With Respect to the Rest of the Magic's Affirmative Defenses.[18]

Where "a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense . . . a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support [an essential element of] the [non-moving party's] case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (citation omitted). A

> "movant for summary judgment 'always bears' the burden of production or the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact."

*Id. quoting Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Plaintiffs have made no effort to show that there is an absence of evidence to support an essential element of any of the Magic's affirmative defenses and have therefore not met even their initial burden of production with respect to these affirmative defenses.

Plaintiffs' summary judgment argument regarding the Magic's affirmative defenses of acquiescence, waiver, and estoppel consists of nothing more than the conclusory statements that these defenses "must be manifested by overt acts" and "simple inaction is not sufficient." Plaintiffs' Motion at 29. Plaintiffs do not identify an element of these defenses and show the Court that there is no evidence to support that element, as required by Rule 56. Plaintiffs then concede that it is "unclear whether laches could apply" (*Id*) but again fail to identify any element for which there is no evidence. With respect to the Magic's defenses of First Amendment and Copyright Misuse, Plaintiffs argue nothing more than that they are inapplicable here, not that there is a lack of evidence of an essential element of these defenses. *Id*. at 30. And Plaintiffs do

---

[18] The Magic already addressed its fair use affirmative defense above and will not repeat the argument here.

not even address the Magic's affirmative defense of failure to state a claim. For these reasons, Plaintiffs have failed to meet even their initial burden of production at the summary judgment stage. However, without waiving its argument that Plaintiffs have failed to meet their burden of production and therefore cannot be entitled to summary judgment on the Magic's affirmative defenses, in an abundance of caution, the Magic will briefly address these defenses:

1. Implied License, Acquiescence, and Waiver and Estoppel.

Plaintiffs manifested through overt acts their intention to allow the Magic to use the Subject Songs through their agreements with various social media platforms. The majority of the Accused Uses were posted on social media sites governed by agreements with publishers and administrators like Kobalt. At the end of the discovery period in this action, Plaintiffs belatedly produced hand-picked examples of social media agreements between Kobalt on the one hand, and Meta, Google, and TikTok on the other. Magic's Resp. to Plaintiffs' SOMF ¶ 80. These agreements contain language indicating that the Accused Uses ██████████████████████ ████████ and therefore did not infringe. *Id.* However, because Plaintiffs did not produce agreements covering all of the years of the relevant Accused Uses, an issue of fact remains as to whether the Accused Uses were covered by the agreements and the Magic should be afforded an opportunity at trial to show these licenses to the jury. *Id.* ¶ 82.

Furthermore, Kobalt's agreement with Google/YouTube contains ████████████████ ███████████████████████████████████████████████████████████████ ███████████████████████████████████████████ *Id.* ¶ 81. Genuine issues of material fact exist as to whether (1) the Accused Uses are ████████████████ ████████████ and (2) the Magic, as a ████████ is an intended third-party beneficiary entitled to ████████████████ *See Fed. Ins. Co. v. Union Pac. R. Co.*, 590 F. Supp. 1292, 1295 n.1 (C.D.

22

Cal. 2008) (third party beneficiary permitted to enforce covenant not to sue).[19]

2. <u>Laches</u>

To the extent the Court or a jury eventually hold that any of Plaintiffs' claims are not barred by the applicable statute of limitations, there is ample evidence in the record to show that Plaintiffs unnecessarily delayed filing this action, and that delay may cause their claims to be barred, in whole or in part. *See, e.g.*, Ex. C, TuneSat detection results. The Magic should be permitted to pursue a defense of laches beyond this stage.

3. <u>First Amendment</u>

The Accused Uses themselves demonstrate constitutionally protected speech. To the extent there is a finding of no fair use, the Magic should be permitted to argue that its works are protected speech under the First Amendment.

4. <u>Copyright Misuse</u>

Plaintiffs' attempts to extract exorbitant and disproportionate sums to settle claims of alleged infringement (*See* Doc. 58 and its exhibits) are at least some evidence of copyright misuse making summary judgment on this claim inappropriate.

**F. Objections to Plaintiffs' Summary Judgment Evidence**

The Magic objects to the following evidence submitted by Plaintiffs and move the Court to strike this evidence from the Summary Judgment record:

- Declaration of Caitlyn Miles (Docs. 48, 64) and the exhibits attached thereto because the declarant and the signatory are two different people;

- Declaration of Diana Sanders (Docs. 54, 68) and the exhibits attached thereto because statements in the declaration are made on information and belief;

---

[19] The agreement between Google and Kobalt is ███████████████. *See* Ex. M, KOBALT_ORLANDO_001567 at Sec. 13.15.

- Declaration of Erica Carvajal Wong (Docs. 57 through 57-8) because the declaration was filed seven days after the deadline for dispositive motions;

- Declaration of James Arnay (Doc. 50) and the exhibits attached thereto because the statements in the declaration are not supported by the documents the declarant relies upon; and

- Exhibits 3-1 through 38-1 because they are not specifically referenced in Plaintiffs' Rule 56.1 Statement.

**CONCLUSION**

For the foregoing reasons, the Magic respectfully requests that Plaintiffs' Motion for Partial Summary Judgment be denied and that the Court sustain the Magic's objections and strike from the record the Declarations of Caitlyn Miles, Diana Sanders, James Arnay, and Erica Carvajal Wong, as well as all of the exhibits attached thereto, and also strike Exhibits 3-1 through 38-1 for the reasons stated herein. The Magic further request all other relief at law or equity to which it may be entitled.

Date:   New York, New York
        February 28, 2025

Respectfully submitted,

**BARNES & THORNBURG LLP**

By:     */s/ Benjamin T. Pendroff*
David S. Slovick
New York Bar No. 5337811
390 Madison Avenue, 12th Floor
New York, New York 10017
Telephone:  (646) 746-2000
Facsimile:  (646) 746-2001
Email: David.Slovick@btlaw.com

Anna Kalinina *(admitted pro hac vice)*
Texas Bar No. 24092605
Benjamin T. Pendroff
New York Bar No. 5013982
2121 N. Pearl Street, Suite 700
Dallas, TX 75201-2469
Telephone: (214) 258-4200
Facsimile: (214) 258-4199
Email: Anna.Kalinina@btlaw.com
Email: bpendroff@btlaw.com

William Craver (*admitted pro hac vice*)
2029 Century Park East, Suite 300
Los Angeles, CA 90067
Telephone: (310) 284-3771
Facsimile: (310) 284-3894
Email: wcraver@btlaw.com

***Counsel for Defendant Orlando Magic,***
***Ltd.***

## WORD-COUNT CERTIFICATION

Pursuant to Local Civil Rule 7.1(c), undersigned counsel hereby certifies that the foregoing Memorandum of Law in Opposition to Plaintiffs' Motion for Summary Judgment and Objections to Plaintiffs' Summary Judgment Evidence complies with the word-count limitations in the Rule and contains 8,296 words.

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on this 28th day of February, 2025, the foregoing pleading was served through the NYSD ECF system.

/s/ Benjamin T. Pendroff
Benjamin T. Pendroff