IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ARTIST PUBLISHING GROUP, LLC dba APG, a Delaware Limited Liability Company; FIRST-N-GOLD PUBLISHING, INC., a Florida Corporation; LUKASZ GOTTWALD an individual doing business as KASZ MONEY PUBLISHING; KMA ASSETS I LP, a Delaware Limited Partnership; KMA ASSETS II LIMITED, a United Kingdom Private Limited Company; KOBALT MUSIC PUBLISHING AMERICA, INC. dba KMPA, a Delaware Corporation; MXM MUSIC AB dba MXM, a Swedish Limited Liability Company; NOTTING HILL MUSIC, INC., a New York Corporation; and PRESCRIPTION SONGS, LLC, a California Limited Liability Company,<br><br>    Plaintiffs,<br><br>    vs.<br><br>ORLANDO MAGIC, LTD. dba ORLANDO MAGIC, a Florida Limited Partnership; and DOES 1-10, inclusive,<br><br>    Defendants. | Case No: 24-5461-JSR<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT** |

1

**TABLE OF CONTENTS**

INTRODUCTION …………………………………………………………………………....1

ARGUMENT …………………………………………………………………………………1

    I.      Plaintiffs establish their direct infringement claim ………………………………1

          a.   Plaintiffs own the Subject Works ………………………………………….....1

          b.   Defendant copied the Subject Works …………………………….………3

               i.   The predicate act doctrine applies to Defendant ………………..……..3

              ii.   Defendant's fair use defense fails ………………………………...…..4

             iii.   Defendant's Infringing Uses are not *de minimis* ………………………5

          c.   Plaintiffs establish Defendant willfully infringed ……………………………..6

    II.     Defendant's statute of limitations affirmative defense also fails …………………7

          a.   TuneSat is not Plaintiffs' agent ……………………………………...…………..7

          b.   Even if TuneSat was Kobalt's agent, TuneSat's knowledge cannot be imputed upon Plaintiffs …………………………………………………...…7

          c.   Even if TuneSat's knowledge is imputed to Plaintiffs, Plaintiffs discovered the Infringing Uses on July 19, 2021 and Defendant identifies no reason why Plaintiffs should have discovered them earlier ………………………….…….8

    III.   Defendant's remaining affirmative defenses fail ……………………………....8

    IV.   Response to Defendant's evidentiary objections ………………………………..9

CONCLUSION ……………………………………………………………………..………10

# TABLE OF AUTHORITIES

**Cases**

*Davis v. Blige*,
  505 F.3d 90 (2d Cir. 2007) ............................................................................................. 3

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
  598 U.S. 508 (2023) ....................................................................................................... 4

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
  11 F.4th 26 (2d Cir. 2021) ............................................................................................. 5

*Authors Guild v. Google, Inc.*,
  804 F.3d 202 (2d Cir. 2015) .......................................................................................... 4

*Campbell v. Acuff-Rose Music, Inc.*,
  510 U.S. 569 (1994) ....................................................................................................... 5

*Capitol Records, LLC v. ReDigi Inc.*,
  934 F.Supp.2d 640 (S.D.N.Y. 2013) .......................................................................... 3, 4

*Country Rd. Music, Inc. v. MP3.com, Inc.*,
  279 F. Supp. 2d 325, 329 (S.D.N.Y. 2003) .................................................................. 6

*Craig v. UMG Recordings, Inc.*,
  380 F. Supp. 3d 324, 331 (S.D.N.Y. 2019) .................................................................. 3

*Cuoco v. Hershberger,*
  No. 93cv2806 (AGS), 1996 WL 648963 (S.D.N.Y. Nov. 6, 1996) ............................ 10

*F.D.I.C. v. Giammettei*,
  34 F.3d 51 (2d Cir.1994) ............................................................................................... 8

*Fioranelli v. CBS Broad. Inc.*,
  551 F. Supp. 3d 199 (S.D.N.Y. 2021) ........................................................................... 5

*Grant v. Trump,*
  563 F. Supp. 3d 278, 287 (S.D.N.Y. 2021) ............................................................... 4, 5

*Grant v. Trump*, No. 20-CV-7103 (JGK),
  2024 WL 4179057 (S.D.N.Y. Sept. 13, 2024) ............................................................. 4

*Gustavia Home, LLC v. Rutty*,
  785 F. App'x 11 (2d Cir. 2019) .................................................................................... 2

*Intimo, Inc. v. Briefly Stated, Inc.*,

    948 F.Supp. 315 (S.D.N.Y. 1996) ............................................................................... 3

*Jorgensen v. Epic/Sony Recs.*,

    351 F.3d 46 (2d Cir. 2003)......................................................................................... 1

*Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*,

    399 F. Supp. 3d 120 (S.D.N.Y. 2019)........................................................................ 8

*Michael Grecco Prods., Inc. v. Valuewalk, LLC*,

    345 F. Supp. 3d 482 (S.D.N.Y. 2018)........................................................................ 9

*N.A.S. Import Corp. v. Chenson Enterprises, Inc.*,

    968 F.2d 250 (2d Cir.1992)........................................................................................ 6

*Nicklen v. Sinclair Broadcast Group, Inc.*,

    551 F.Supp.3d 188 (S.D.N.Y 2010)( ......................................................................... 1

*Petrella v. Metro–Goldwyn–Mayer, Inc.*,

    572 U.S. 663 (2014)................................................................................................... 9

*Psihoyos v. John Wiley & Sons, Inc*.,

    748 F.3d 120 (2d Cir. 2014)....................................................................................... 7

*Ringgold v. Black Ent.* Television*, Inc.*,

    126 F.3d 70 (2d Cir. 1997)........................................................................................ 5

*TR 39th St. Land Corp. v. Salsa Distribution USA, LLC*,

    No. 11CV7193 DF, 2015 WL 1499173 (S.D.N.Y. Mar. 25, 2015)......................... 10

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,

    996 F. 2d 1366 (2d Cir. 1993)................................................................................... 9

*UMG Recording, Inc. v. Escape Media Grp., Inc.*,

    No. 11 Civ. 8407 (TPG), 2014 WL 5089743 (S.D.N.Y. Sept. 29, 2014).................. 9

**Statutes**

17 U.S.C. § 106........................................................................................................... 1

17 U.S.C. § 507(b) ...................................................................................................... 7

**Rules**

Federal Rule of Civil Procedure 56 ............................................................................ 8

# INTRODUCTION[1]

Plaintiffs timely filed their motion and supporting documents pursuant to the Court's Civil Case Management Plan (Dkt. 25) on February 14, 2025. Dkts. 45-60, 64, 66-69, 71.[2] Plaintiffs have established as a matter of law the elements of willful copyright infringement. Defendant cannot dispute that Plaintiffs are the legal and/or beneficial owners of exclusive copyrights in the Subject Works or Defendant's copying of the Subject Works. Further, Plaintiffs have met their burden that Defendant willfully infringed. Finally, the undisputed facts demonstrate that all of Defendant's affirmative defenses lack merit.

# ARGUMENT

## I.  Plaintiffs establish their direct infringement claim

Plaintiffs have proven the elements of direct copyright infringement, including both (1) ownership and (2) violation of Plaintiffs' exclusive rights under 17 U.S.C. § 106. *Nicklen v. Sinclair Broadcast Group, Inc.*, 551 F.Supp.3d 188, 193 (S.D.N.Y 2010)(citation omitted).

### a.  Plaintiffs own the Subject Works

Plaintiffs meet their burden to establish ownership. The copyright registrations for the Subject Works provide **all Plaintiffs** with a presumption of ownership, irrespective of the sufficiency of the Plaintiffs' declarations. *See Jorgensen v. Epic/Sony Recs.,* 351 F.3d 46, 51 (2d Cir. 2003)("A certificate of registration from the United States Register of Copyrights constitutes *prima facie* evidence of the valid ownership of a copyright."). Defendant does not contest that each song is registered and presents no evidence to rebut Plaintiffs' presumption of ownership. Plaintiffs' Response to Defendant's Statement of Additional Material Facts ("P. Resp."), ¶¶15, 57 ("The Magic admits that it has not produced evidence in this action regarding the ownership

---

[1] Unless otherwise indicated, all defined terms maintain their definition from Plaintiffs' Motion. Dkt. 46.

[2] On February 7, 2025, the parties met and conferred on their contemplated cross-motions for summary judgment and called the Court to seek leave to file documents under seal in support of their respective motions. On February 7, 2025, all parties and the Court had notice of Plaintiffs' contemplated motion. Plaintiffs believed the call sufficient under the Case Management Plan and submitted a notice of intent to file a motion for summary judgment on February 10, 2025. Dkt. 42.

1

of the Subject Works."). Defendant also admits that all Plaintiffs, except Artist Publishing Group, Inc. ("APG"), Prescription Songs, LLC ("Prescription"), KMA Assets I, and KMA Assets II, have an "ownership interest in the Subject Works." P. Resp., ¶6. In short, Defendant has not met its burden to dispute Plaintiffs' prima facie claim of ownership by "demonstrat[ing] the existence of a triable issue of fact as to a bona fide defense to the action[.]"*Gustavia Home, LLC v. Rutty*, 785 F. App'x 11, 14 (2d Cir. 2019)(summary order).

Defendant only contests KMA Assets I, KMA Assets II, APG, and Prescription's ownership by challenging their declarations. This position is unavailing. APG's declarant, Caitlyn Miles, signed the declaration, and the ECF entry refers to Ms. Miles. Dkt. 48. The captions and the top of the declaration also list Ms. Miles. The erroneous inclusion of another potential declarant in the declaration has been corrected. Dkt. 92-2.

Prescription's declaration is **not** based solely on "information and belief." Only the first sentence of each paragraph refers to "information and belief," while the following sentences regarding Prescription's rights are made on personal knowledge. Dkt. 54. Ms. Sanders' deposition testimony supports her personal knowledge of Prescription's ownership. P. Resp., at p. 34.

For the KMA entities, Defendant ignores the contents of the James Arnay declaration, and instead selectively references a single paragraph and exhibit to contest KMA Assets I and KMA Assets II's ownership. But Mr. Arnay explains the chain of title from author to ultimate rights holder for both Subject Works owned by the two KMA entities. Dkt. 50, ¶¶10-19, Ex. 5-14; P. Resp., at pp. 34-36. In sum, Mr. Arnay's, Ms. Miles', and Ms. Sanders' declarations all provide admissible evidence of ownership through their personal knowledge and the attached agreements.

Nor does Defendant challenge the sufficiency of the language in any of the Plaintiffs' songwriter agreements. This is because "there is no dispute between the copyright owner and the transferee about the status of the copyright [because] it would be unusual and unwarranted to permit a third-party infringement to invoke [§ 204] to avoid suit for copyright infringement."

2

*Intimo, Inc. v. Briefly Stated, Inc.*, 948 F.Supp. 315, 318 (S.D.N.Y. 1996)(citations omitted).

Finally, a co-owner can transfer its copyright interest by an instrument of conveyance, in writing and signed by the owner of the rights conveyed. 17 U.S.C. § 204. Thus, each Plaintiff does not need to prove what percentage it possesses in each Subject Work. While potentially relevant to damages, Plaintiffs seek summary judgment only on the issue of liability. Plaintiffs have the right to sue on the exclusive rights they attained from the corresponding writers. The percentage share of the interest is immaterial to their liability claims. *See, e.g.*, *Davis v. Blige*, 505 F.3d 90, 99 (2d Cir. 2007)("[A] joint owner is not required to join other co-owners in an action for infringement."). Plaintiffs meet their burden to prove ownership.

b. **Defendant copied the Subject Works**

Defendant does not dispute access or that the Infringing Uses contain substantially similar uses of the Subject Works. P. Resp., ¶¶55-59. Instead, Defendant argues three Infringing Uses were extraterritorial and that all uses were fair use or *de minimis*. These arguments fail.

i. **The predicate act doctrine applies to Defendant**

Under the Predicate Act Doctrine, a defendant can be liable for related infringing acts occurring outside the country if the defendant (1) commits a predicate infringing act in the United States, and (2) the act permits further reproduction abroad. *Craig v. UMG Recordings, Inc.*, 380 F. Supp. 3d 324, 331 (S.D.N.Y. 2019). Here, predicate act liability applies to Defendant.

"Courts have consistently held that the unauthorized duplication of digital ... files over the Internet infringes a copyright owner's exclusive right to reproduce." *Capitol Records, LLC v. ReDigi Inc.*, 934 F.Supp.2d 640, 648 (S.D.N.Y. 2013). In addition, "unauthorized transfer of a digital ... file over the Internet" also "constitutes reproduction within the meaning of the Copyright Act." *Id.* At deposition, Defendant admitted that Defendant's Brazilian contractor, SAMBA, accesses these videos from Defendant's "content library." P. Resp., ¶73. Defendant's act of creating digital content and placing it in its library for access by its foreign contractors through the Internet necessarily involves the acts of duplicating and transferring a digital file

3

over the Internet. Therefore, Defendant's unauthorized transfer of this content containing a Subject Work is sufficient to constitute a predicate act for purposes of the Copyright Act. *Capitol Records*, 934 F.Supp.2d at 648–51.

### ii. Defendant's fair use defense fails

The defendant bears the burden of showing that a use is fair. *Authors Guild v. Google, Inc.*, 804 F.3d 202, 213 (2d Cir. 2015). Defendant correctly identifies the four relevant factors but fails to meet their burden.

**Purpose and character:** Factor one asks whether the new work supersedes the objects of the original creation (supplanting the original), or instead adds something new, with a further purpose or different character. *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023)("*Warhol*"). A use with a "further purpose or different character is said to be transformative[,] [and] transformativeness is a matter of degree." *Id*. In *Warhol,* the Supreme Court "rejected the idea that any secondary work that adds a new aesthetic or new expression to its source material is necessarily transformative." 598 U.S. at 543. To so hold "would swallow the copyright owner's exclusive right to prepare derivative works." *Id*. at 541.

In this case, a review of each Infringing Use reveals a low degree of "transformativeness" if any. The Infringing Uses wholesale copy music to accompany marketing material. The content is like that in *Grant v. Trump* where the plaintiff's music was used in a political ad on social media. No. 20-CV-7103 (JGK), 2024 WL 4179057, at *2 (S.D.N.Y. Sept. 13, 2024). Here, as in *Grant*, the Defendant "did not edit the song's lyrics, vocals, or instrumentals at all, and the song is immediately recognizable when it begins playing." *Id.* The infringing uses are also commercial in nature. *See Warhol*. at 531. Certainly, there is a "well-established market for music licensing." *Grant v. Trump,* 563 F. Supp. 3d 278, 287 (S.D.N.Y. 2021). And certainly Defendant "sought to gain an advantage by using [Plaintiffs'] popular song[s] without paying [Plaintiffs] the customary licensing fee." *Id.* This factor favors Plaintiffs.

**Nature of the copyrighted work:** Defendant misinterprets this factor, analyzing the *infringing works* instead of the nature "of the *copyrighted work***.**" *Warhol*, 598 U.S. at 527. The

4

copyrighted works are original creative works and are, therefore, "close[]to the core of intended copyright protection." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 582 (1994).

*Campbell*, 510 U.S. at 586 (1994). This factor also favors Plaintiffs.

**Amount and substantiality of the use:** For this factor, courts analyze the quantity of the materials used as well as their quality and importance in relation to the original work. *See Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 36 (2d Cir. 2021). Here, the Subject Works play for the majority of the Infringing Uses, and the excerpts are of central importance to the Subject Works. P. Resp., ¶74. Here, too, this factor favors Plaintiffs.

**Effect of the use on the market for the original:** The fourth factor asks "whether, if the challenged use becomes widespread, it will adversely affect the potential market for the copyrighted work." *Andy Warhol Found.*, 11 F.4th at 48 (citations omitted). Here, if the challenged use becomes widespread, it will undermine copyright holders' ability to license the Subject Works. *Grant v. Trump,* 563 F. Supp. 3d 278, 287 (S.D.N.Y. 2021)("widespread, uncompensated use of [a copyright owner's] music in promotional videos... undermine[s] [a copyright holder's] ability to obtain compensation in exchange for licensing his music."). Plaintiffs have satisfied their burden of identifying the relevant market–licensing for promotional videos–as a market that the Defendant's copying would harm. The Defendant bears the ultimate burden of showing a lack of market harm, and it has not done so. *Id*. Thus, this factor also favors Plaintiffs.

### iii. Defendant's Infringing Uses are not *de minimis*

For *de minimis* infringement, Defendant must demonstrate that its use of the Subject Works was so trivial "as to fall below the quantitative threshold of substantial similarity." *Ringgold v. Black Ent. Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997). On summary judgment, courts look to whether "the copying is quantitatively and qualitatively sufficient to support the legal conclusion that infringement (actionable copying) has occurred," *Fioranelli v. CBS Broad. Inc.*, 551 F. Supp. 3d 199, 222 (S.D.N.Y. 2021).

Here, Defendant does not dispute substantial similarity. P. Resp., ¶¶55-59. The use of the

5

Subject Works in the Infringing Uses are both qualitatively and quantitatively "actionable copying." To illustrate this point further, 27 of the 36 Infringing Uses contain the chorus of the song, 32 of the Infringing Uses include more than 10 seconds of the song, and 17 of the uses replicate the Subject Work for the entire runtime of the Infringing Use. And many of the uses sync the music to the action of the Infringing Video or include choreographed movement to the music. P. Resp., ¶74. From both a qualitative and quantitative standpoint, the Defendant's use is not *de minimis*.

### c. Plaintiffs establish Defendant willfully infringed

Willfulness may be proven on summary judgment. *Country Rd. Music, Inc. v. MP3.com, Inc.,* 279 F. Supp. 2d 325, 329 (S.D.N.Y. 2003). Knowledge of infringement "need not be proven directly but may be inferred from the defendant's conduct." *N.A.S. Import Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir.1992). Defendant's alleged belief that the performing rights licenses somehow conveyed a right to social media use, to the extent it existed, reduces to a mistake of law. Defendant, knowing its activities otherwise constituted infringement, cannot escape a finding of willfulness by reliance on its erroneous views of a legal "escape hatch" that does not exist and which itself rested on a reckless disregard for Plaintiffs' clearly established legal rights. *See Country Rd. Music, Inc.,* 279 F. Supp. 2d at 328.

Defendant is a large media and entertainment company that protects its own intellectual property rights and understands how intellectual property rights function. P. Resp., ¶¶23-24, 60, 65-66, 68, 70-71. Defendant knew they could not use popular music, such as the Subject Works, in social media posts. P. Resp., ¶¶23-24, 65-66, 68. Just like Orlando's trademarks and copyrights cannot be used without permission, Defendant knew a license was required to use Plaintiffs' music. P. Resp., ¶¶23-24, 65-66, 68. Further, to point to Defendant's employee's lack of training dodges the issue—as an owner of intellectual property rights, Defendant knew better and posted without thought or regard to music rights holders. P. Resp., ¶¶76, 78-79. Its belief that a license for public performance included online posting is not reasonable. *See Country Rd. Music, Inc.,* 279 F. Supp. 2d at 328.

6

II.   **Defendant's statute of limitations affirmative defense also fails**[3]

Plaintiffs' claims are timely. Under 17 U.S.C. § 507(b) the statute of limitations for infringement is three years. *See Psihoyos v. John Wiley & Sons, Inc*., 748 F.3d 120, 124 (2d Cir. 2014). Plaintiffs first discovered the Infringing Uses, at the earliest, on July 19, 2021, and filed three years from that date. PAMF (Dkt. 80) ¶¶48, 98, 101.[4]

a. **TuneSat is not Plaintiffs' agent**[5]

Defendant's agency argument focuses almost exclusively on one provision of the contract between TuneSat, LLC and Kobalt Music Publishing America, Inc ("Kobalt").



The relationship between TuneSat and Kobalt, both contractually and practically, illustrates that neither consented to an agency relationship.

b. **Even if TuneSat was Kobalt's agent, TuneSat's knowledge cannot be imputed upon Plaintiffs**[6]

Defendant relies on case law discussing the attorney-client relationship to impute

---

[3] Complete discussion in Plaintiffs' opposition. Dkt. 84 pgs. 7-24.

[4] Plaintiffs reference their statement of additional material facts submitted in support of their opposition to Defendant's motion for partial summary judgement Dkt. 80 ("PAMF").

[5] Complete discussion in Plaintiffs' opposition. Dkt. 84 pgs. 8-15.

[6] Complete discussion in Plaintiffs' opposition. Dkt. 84 pgs. 16-17.

TuneSat's knowledge to Kobalt. But TuneSat was never Kobalt's counsel. Defendant's legal argument, therefore, does not apply here. *See, e.g.*, *Jose Luis Pelaez, Inc. v. McGraw-Hill Glob. Educ. Holdings LLC*, 399 F. Supp. 3d 120, 138 (S.D.N.Y. 2019)(holding no imputation of agent's knowledge to principal where principal gave the agent the right to sublicense its work, but did not include the prosecution of infringement claims). Likewise, even if TuneSat were deemed to be an agent of Kobalt, its knowledge should not be imputed to Kobalt because TuneSat was never authorized to prosecute infringement claims.

    **c. Even if TuneSat's knowledge is imputed to Plaintiffs, Plaintiffs discovered the Infringing Uses on July 19, 2021 and Defendant identifies no reason why Plaintiffs should have discovered them earlier[7]**

The operative discovery date is July 19, 2021. Kuhn's (Kobalt's agent) earliest discovery date occurred when it first accessed the Infringing Uses in the TuneSat case management system. PAMF (Dkt. 80) ¶¶48, 98, 101. That date is July 19, 2021, and is within the 3-year statute of limitations. Defendant points to no legitimate reason why the detections should have been discovered before July 19, 2021. ███████████████████████████████████████████████████████████████████████████████ But these dates do not indicate the true date of TuneSat's knowledge, and even if they did, they do not indicate when Kuhn discovered the Infringing Uses, which in reality was July 19, 2021.

    **III.   Defendant's remaining affirmative defenses fail**

When a plaintiff challenges "the legal sufficiency of an affirmative defense—on which the defendant bears the burden of proof at trial—a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir.1994) (cleaned up). Plaintiffs need not support its motion with affidavits or other materials that tend to disprove the defenses. *See,*

---

[7] Complete discussion in Plaintiffs' opposition. Dkt. 84 pgs. 19-24.

*e.g., id.* (citation omitted). Rather, where Defendant "fails to introduce any evidence sufficient to support an essential element of a defense, the court may properly grant summary judgment dismissing such a defense as a matter of law." *UMG Recording, Inc. v. Escape Media Grp., Inc.*, No. 11 Civ. 8407 (TPG), 2014 WL 5089743, at *18 (S.D.N.Y. Sept. 29, 2014)(citation omitted).

Defendant's implied license, acquiescence, waiver, and estoppel defenses fail because there is no evidence of overt acts by Plaintiffs to support these defenses. In support of their license defense, Defendants point to licenses between Kobalt and the social media companies. However, this Court already ruled that these agreements "do not contain relevant material." The Court also stated that Defendant could raise these agreements in an amended answer only for the limited purpose of preserving the Defendant's defenses at and after trial, and **not** the already filed Motions for Summary Judgment. P. Resp., ¶¶80-82. Laches cannot be a bar to relief in the face of a statute of limitations. *Petrella v. Metro–Goldwyn–Mayer, Inc.*, 572 U.S. 663, 679 (2014). The First Amendment is not a separate affirmative defense, and the fair use doctrine covers all First Amendment concerns. *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F. 2d 1366, 1378 (2d Cir. 1993). Finally, copyright misuse relates to a party's attempt to monopolize another area beyond the rights granted. Defendant's contention that Plaintiffs' attempt to seek relief for violations of their rights under the copyright act is "misuse" misstates the defense. *Michael Grecco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 511 (S.D.N.Y. 2018).

## IV. Response to Defendant's evidentiary objections

Defendant's objections to the consideration of the Sanders, Wong, Miles, and Arnay declarations, and certain exhibits to Kobalt's Rule 56.1 Statement, should be rejected.[8] First, Defendant misstates the contents of the declaration of Diana Sanders, which indeed contains sufficient evidence of ownership as to the songs referenced based on the declarant's personal knowledge. Second, Plaintiffs' counsel erroneously filed the declaration of Jessie Kuhn twice,

---

[8] Plaintiffs also discuss Defendant's evidentiary objections in the concurrently-filed Response to Defendant's Statement of Additional Facts.

one in place of Erica Carvajal Wong's. Dkt. 57. Plaintiffs filed an Errata (Dkt. 72) correcting the mistake. Ms. Wong signed her declaration on February 14, 2025, and the exhibits to her declaration were timely and properly filed. Dkts. 57-1 through 57-8. Further, Ms. Wong submitted a similar affidavit in support of Plaintiffs' Opposition to Defendant's Motion for Summary Judgment. Dkt. 91. Third, the declaration of Caitlyn Miles (Dkt. 48) and Plaintiffs' Separate Statement of Material Facts (Dkt. 47) contained an erroneous typographical remnant from an earlier draft on behalf of APG. Plaintiffs corrected this issue through Errata (Dkt. 92) and provided a replacement declaration of Caitlyn Miles (Dkt. 92-2).[9] Fourth, the declaration of James Arnay fully explains the chain of title for KMA Assets I and KMA Assets II. Dkt. 50, ¶¶10-19, Ex. 5-14; P. Resp., at pp. 34-36. Finally, Exhibits 3-1 through 38-1 are referenced in Plaintiffs' Rule 56.1 Statement (P. Resp., at pp. 36-37); Defendant's argument, in a footnote (ECF 79 at 11 n. 5) need not be considered by the Court. In any event, there is no basis for these exhibits to be stricken.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Plaintiffs' Motion for Partial Summary Judgment be granted, holding that (1) Plaintiffs own the Subject Works; (2) Defendant copied the Subject Works; (3) Defendant's infringement is willful, and (4) dismissing Defendant's affirmative defenses as a matter of law.

DATED: March 7, 2025                                    **JOHNSON & JOHNSON LLP**

                                                        By   */s/* Douglas Johnson
                                                             Douglas Johnson

                                                        **JOHNSON & JOHNSON LLP**
                                                        Douglas L. Johnson (Admitted Pro Hac Vice)

---

[9] Courts routinely consider reasserted statements and declarations. *TR 39th St. Land Corp. v. Salsa Distribution USA, LLC*, No. 11CV7193 DF, 2015 WL 1499173, at *2 fn. 1 (S.D.N.Y. Mar. 25, 2015); *See e.g., see also Cuoco v. Hershberger,* No. 93cv2806 (AGS), 1996 WL 648963, at *3 (S.D.N.Y. Nov. 6, 1996).

Frank R. Trechsel (Admitted Pro Hac Vice)
439 N. Canon Dr. Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: djohnson@jjllplaw.com
 ftrechsel@jjllplaw.com

**ANTHONY MOTTA ESQ**
Anthony R. Motta (SBN 1678275)
211 East 43rd Street, 7th Floor
New York, NY 10017
Telephone:    (914) 589-5356
Email: amotta@anthonymotta.com

## CERTIFICATE OF COMPLAINCE

I hereby certify that Plaintiffs' Memorandum Of Points And Authorities Opposing Defendant's Motion For Summary Judgment contains 3,494 words in compliance with Local Rule 7.1.

By     */s/* Frank R. Trechsel
        Frank R. Trechsel

**JOHNSON & JOHNSON LLP**
Douglas L. Johnson (Admitted Pro Hac Vice)
Frank R. Trechsel (Admitted Pro Hac Vice)
439 N. Canon Dr. Suite 200
Beverly Hills, California 90210
Telephone: (310) 975-1080
Facsimile: (310) 975-1095
Email: djohnson@jjllplaw.com
      ftrechsel@jjllplaw.com